HARRY J. COLISH AND RUTH B. COLISH, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 892–65. Filed August 18, 1967.

Harry J. Colish, pro se.
*Kennard I. Mandell,* for the respondent.

FORRESTER, *Judge:* The respondent determined a deficiency in petitioners' income tax for the year 1962 in the amount of $1,135.96. The only issue is whether petitioners sustained a deductible loss in 1962 when a final payment was received from the Foreign Claims Settlement Commission as compensation for Czechoslovakian property confiscated in an earlier year.

### FINDINGS OF FACT

Some of the facts are stipulated and are so found.

The petitioners, Harry J. and Ruth B. Colish, are individuals, husband and wife, who at all relevant times have resided in New York City. They filed a joint return for the calendar year 1962 with the district director of internal revenue, Manhattan, N.Y., and computed their income on the cash receipts and disbursements method of accounting.

Ruth B. Colish is a party only by virtue of her signing the joint return. Unless otherwise noted, references to the petitioner will refer to Harry J. Colish.

The petitioner inherited a 2.1-percent interest in the firm of Herman Low, doing business as a partnership in Mistek-Colloredov, Moravia, Czechoslovakia, in 1944. The firm manufactured alcoholic beverages, and also operated a vegetable and fruit cannery.

In 1945 the Herman Low firm was placed under national administration pursuant to a decree dated May 19, 1945. In 1948, the Communist government of Czechoslovakia passed law 115/1948 *Sb,* the effect of which was to nationalize the Low firm without compensation. On October 25, 1950, pursuant to a decree of the District National Committee at Mistek dated October 13, 1950, an entry was made on the records of the Civil District Court at Ostrava, which officially transferred title to the Low firm to the government. At no time did petitioner receive any income from the firm, nor did he receive any com-

pensation from the Czechoslovakian Government for his interest in the firm.

At the time the Low firm was nationalized and prior to that time, the U.S. Government attempted to obtain compensation for American nationals whose interests were being affected by the Czechoslovakian nationalization programs. Efforts were made to obtain compensation directly from the Czechoslovakian Government, but these efforts proved futile. Thereafter other measures were taken.

In 1947 a Czechoslovakian enterprise contracted to purchase steel mill equipment from an American firm. The price of the equipment was $16 million which was paid in advance of delivery. In 1952 when the machines were completed the Secretary of the Treasury brought a blocking action to prevent their shipment, inasmuch as the exportation of goods to Communist Czechoslovakia from the United States had been prohibited under the export control laws of the United States. The Secretary ordered the equipment sold in 1954, and the proceeds of about $9 million were placed in various banks for the benefit of the Czechoslovakian owners. These accounts were blocked by the United States pending disposition of American property claims against Czechoslovakia.

In 1958, Congress passed title IV of the International Claims Settlement Act of 1949.[1] The purpose of the act was "To provide for the settlement of certain claims of the Government of the United States on its own behalf and on behalf of American nationals against foreign governments." Title IV specifically provided for claims against Czechoslovakia. Prior to this time, Americans whose property had been confiscated by the Czechoslovakian Government had had no rights to any compensation whatsoever.

Under the terms of the act, the proceeds of the sale of the steel mill equipment were placed in a fund designated "the Czechoslovakian Claims Fund." The fund, after certain administrative deductions, was used to satisfy the American claims against Czechoslovakia arising since 1945 from the nationalization of property. The Foreign Claims Settlement Commission was in charge of adjudicating the various claims.

The commission used its best efforts to ascertain the value of the various claims at the time the property was taken. This included establishing contacts with similar claims commissions in other countries and a comprehensive study of the factual and legal circumstances that existed in Czechoslovakia. It determined that in the absence of evidence to the contrary, a claim for compensation under Decree No. 115/48 (the decree nationalizing the Low firm) arose on January 1, 1948, and specifically held that by itself, the date upon which title

---

[1] 72 Stat. 527.

was officially transferred to the government was insufficient to show that a claim arose at a later time. Before the commission would accept a later date than the one presumed, the claimant had to show that he was enjoying the fruits of the property after that date.

In 1962, the commission completed its work. After processing all claims, it awarded a total of about $113 million to American claimants. The amount deposited in the Czechoslovakian Claims Fund was about $8,541,000 after certain deductions. It was used to satisfy the awards in the following manner. Full payment was made for awards up to $1,000 and $1,000 was paid on account on awards in excess of $1,000. Since the balance of the fund was insufficient to pay in full awards over $1,000, the unpaid balance of each award was paid on a prorata basis.

In 1948, petitioner was aware of a policy of the United States to attempt to have its citizens compensated for the loss of their property which had been confiscated by a foreign government. He was also aware of the fact that at that time steps were being taken to seize property in the United States belonging to foreign governments which had taken over American interests without compensation. He knew that Czechoslovakian assets were in this country and hoped that they would be seized pursuant to the U.S. policy of using such assets to compensate its own citizens. In his opinion, in 1948 and thereafter until 1962, he had a reasonable prospect and expectation of at least a partial recovery of the value of his property.

Pursuant to title IV of the International Claims Settlement Act of 1949, as amended, the petitioner filed his claim against the government of Czechoslovakia for his interest in the Low firm on March 18, 1959. In his claim, the petitioner stated that the firm had been nationalized and taken in April 1948, and valued his interest at that time at $33,600.

On June 7, 1961, the petitioner was notified that the commission in a proposed decision had valued his interest at $2,625 and that he was entitled to compensation under section 404 of title IV. He was then awarded $2,625 principal plus interest at 6 percent per annum from January 1, 1948, to August 8, 1958, amounting to $1,669.95. The total award was $4,294.95. Petitioner protested the amount of the award. On August 7, 1961, the commission notified him that the award as originally proposed was made final. The Act did not provide for further appeals in respect to valuation of the property.

On August 18, 1961, pursuant to title IV, petitioner received $1,000 on account on his award. On November 9, 1962, he received $174.76, 5.3038419 percent of the balance of $3,294.95 due him as his prorata share of the balance in the Czechoslovakian Claims Fund. At that time, no further payments were reasonably expected to be made on the remaining $3,120.19 balance nor have any further payments been made.

In his income tax return for the year ended December 31, 1962, on Schedule D, part II, the petitioner claimed a loss of $3,157.99 for his interest in the Low firm as shown below:

### Part II—PROPERTY OTHER THAN CAPITAL ASSETS

| Kind of property | Date acquired | Date sold | Gross sales price | Cost or other basis | Gain or loss |
|---|---|---|---|---|---|
| Claim for interest in Czechoslovakia___ | 1944 | Nov. 8, 1962 | $1,174.76 | $4,294.95 +37.80 | |
| | | | | 4,332.75 | L $3,157.99 |

He explained the deduction in an attached schedule which is reproduced below:

#### Details to Schedule "D", Part II

I, Harry J. Colish, owned a 2.1% interest in the firm of "Herman Low", doing business as a partnership in Mistek-Colloredov, Moravia, Czechoslovakia, which was nationalized without compensation by the Government of Czechoslovakia on January 1, 1948 pursuant to Law 115/1948 Sb.

I valued this interest at Dollars 33,600.— and filed claim in this amount against the Government of Czechoslovakia under Section 404 of Title IV, of the International Claims Settlement Act of 1949, as amended. The Foreign Claims Settlement Commission of the United States, Washington 25, D.C., recognized my 2.1% interest in the firm "Herman Low" but valued my interest in the property taken at Dollars 2,625.— plus interest thereon in the amount of Dollars 1,669.95, for a total of Dollars 4,292.95.— I am enclosing copy of the Award of the Commission of June 7, 1961, Claim No. CZ–1, 562, Decision No. CZ–2370. ("Proposed Decision")

I raised objections to the reduction in value of my claim against the Czechoslovakian Government but the Foreign Claims Settlement Commission confirmed the above-mentioned "Proposed Decision" by its Final Decision of August 4, 1961, Claim No. CZ–1, 562, Decision No. CZ–2370, copy of which is also enclosed.

The Commission made an initial payment on account of my claim in the amount of Dollars One thousand. By its subsequent notice of November 9, 1962 it advised that a final distribution equal to 5.3038419% of the balance would be made which represented Dollars 174.76 for my claim. I, therefore, received total payments of Dollars 1,174.76 against my interest or claim in the amount recognized by the Commission of Dollars 4,294.95. The difference between the amount recognized and the payments received is Dollars 3,120.19 to which must be added expenses incurred by me in securing documents, affidavits, etc. to support my claim.

The total loss incurred by me on this claim amounted, therefore, to *Dollars 3,157.99 which amount is shown as loss in Part II of Schedule D*. The loss claimed here does *not* include the difference between what I still believe to be the correct valuation of my 2.1% interest in the firm of "Herman Low" and the amount of my claim recognized by the Foreign Claims Settlement Commission. I reserve the right to claim this further loss.

In his statutory notice of deficiency respondent disallowed the entire $3,157.99 deduction claimed as follows:

It is determined that your loss claimed in the amount of $3,157.99 resulting from confiscation of property by the Government of Czechoslovakia is not deductible under any section of the Internal Revenue Code of 1954.

Petitioner asserts that such determination is erroneous, and makes further claim for an additional 1962 loss of $6,205.05 based upon the difference between his alleged tax basis of $10,500 and the commission's August 7, 1961, final award of $4,294.95, "should it [said loss] be determined to have been realized in 1962."

### OPINION

The question presented in this case is whether, under section 165 (a)[2] and (c) (3),[3] 1962 is the proper year in which to claim the loss arising out of the confiscation of petitioner's property by Czechoslovakia. Our conclusion that no loss occurred in 1962, makes moot the exact amount thereof, and consequently our decision herein will apply with equal force to respondent's determination and to the further claim asserted in the petition.

Respondent concedes that petitioner did suffer a deductible loss as a result of the confiscation by Czechoslovakia of the Low firm, but it is his position that the proper year for deduction is 1948, the year the property was nationalized, not 1962 the year in which final payment was received for the interest in the Low firm.

The regulations under section 165 provide that a loss is deductible only in the year in which it is sustained. If a claim for reimbursement of a loss exists at the time "the casualty or other event occurs," deductibility of the amount of the claim is postponed until it is determined with "reasonable certainty" whether or not such reimbursement will be received, and its amount. When that time occurs is a question of fact to be determined from the surrounding circumstances.[4]

Petitioner's contention is that at the time the Low firm was nationalized, he had a reasonable prospect of recovery of all or a part of his loss and it was not until 1962 that he was able to determine his exact recovery. Respondent's position is that at the time of nationalization

---

[2] All references are to the Internal Revenue Code of 1954.

[3] SEC. 165. LOSSES.

(a) GENERAL RULE.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

\* \* \* \* \* \* \*

(c) LIMITATION ON LOSSES OF INDIVIDUALS.—In the case of an individual, the deduction under subsection (a) shall be limited to—

\* \* \* \* \* \* \*

(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. \* \* \*

[4] Sec. 1.165-1 Losses.

(d) *Year of deduction.* \* \* \*

(2)(i) If a casualty or other event occurs which may result in a loss and, in the year of such casualty or event, there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Whether a reasonable prospect of recovery exists with respect to a claim for reimbursement of a loss is a question of fact to be determined upon an examination of all facts and circumstances. \* \* \*

no claim for reimbursement existed as to which there was a reasonable prospect of recovery, and that therefore petitioner should have claimed a loss deduction in that year.

To determine if there was a reasonable prospect of recovery at the time of nationalization, such time must be determined.

Petitioner now contends that he lost his interest in the Low firm in 1950 when the decree of the National Committee at Mistek officially declared the Low firm as being nationalized. However, it seems clear that this decree was a mere formality and that for all intents and purposes the petitioner lost any right he may have had in 1948. Petitioner asserted 1948 as the year of taking in his claim filed with the Foreign Claims Settlement Commission and he asserted at the trial of the instant case that the nationalization became effective, "not earlier than 1948, and certainly not later than 1950." Since the ultimate result is the same whether we consider 1948 or 1950 as the year of taking, we adopt petitioner's language and hold that it occurred not later than 1950.

Having determined the time of nationalization, the question remains as to whether petitioner then had the requisite reasonable prospect of recovery of all or a part of the value of his interest under section 165. Respondent contends no such reasonable prospect existed, and we agree.

At the time of nationalization it was evident that the government of Czechoslovakia did not intend to reimburse American nationals for their interests which were expropriated. No consideration was provided for in the nationalization decree and none was paid. The petitioner would have had to have been an "incorrigible optimist" to have expected payment from that source, and the tax law does not require a taxpayer to be of that species in this type of a situation. *United States* v. *White Dental Co.*, 274 U.S. 398 (1927); *Peter S. Elek*, 30 T.C. 731 (1958); *Wyman* v. *United States*, 166 F. Supp. 766; *Paul H. Schweitzer* v. *Commissioner*, 376 F. 2d 30 (C.A. 3, 1967), affirming a Memorandum Opinion of this Court.

Despite this improbability of any recovery from the Czechoslovakian Government, petitioner insists that he was not an incorrigible optimist, but actually had reasonable grounds to expect to recover all or a part of his investment. As proof of the reasonableness of his position, petitioner makes the following argument in brief:

(1) Since World War II, the United States Government has compensated American citizens for losses of property which have occurred in several foreign countries through nationalization and other forms of loss by utilizing foreign assets.

(2) In 1948 and at the time of nationalization of Petitioner's share in the firm of Herman Low, steel mill equipment existed in this country whose exportation was prohibited under the existing U.S. export control laws.

(3) Petitioner was aware of the existence of the Czechoslovak assets and familiar with the U.S. Government's practice to utilize such foreign assets to compensate American citizens.

Petitioner's expectation that his own Government would follow its established practice in utilizing foreign assets could certainly not be regarded as "incorrigible optimism". Petitioner did in no way rely upon actions or promises of foreign governments. Petitioner does not claim that he had absolute and complete certainty of recovery but the above cited facts constituted, at the very least, grounds for reasonable prospects of recovery.

Though we find this argument appealing, we think that petitioner had a deductible loss "not later than 1950." The reason is that unless there exists a claim based on a legal right for reimbursement from a third party in the year a loss occurs, the loss must be deducted in that year. The prospect of recovery must be based on firmer ground than the possibility of a gratuitous reimbursement from a third party. *Remington Typewriter Company*, 4 B.T.A. 880 (1926) ; *Estate of Zinaida Bary* v. *Commissioner*, 368 F. 2d. 844 (C.A. 2, 1966), affirming a Memorandum Opinion of this Court; *United States* v. *White Dental Co.*, *supra*.

It is the reasonable prospect of an existing right to be reimbursed as well as the reasonable prospect of being in fact reimbursed which determines. As was pointed out in *Remington Typewriter Company*, *supra* at 889 :

There was, undoubtedly, a moral obligation on the United States to pay the funds received, if any, to the individuals who had suffered losses at the hands of the enemy. There was, however, only a possibility of payment—an expectancy of interest in the fund, that is, a possibility coupled with an interest. This expectancy of interest was not in existence in 1918 when the losses were sustained. * * * Petitioner should not be indefinitely held to account upon the idea that something may happen in the future, which will change the *existing* conditions. * * * [Emphasis supplied.]

In the present case, despite past actions of the United States and the petitioner's hope that he would eventually be reimbursed for his loss by the United States, petitioner had no existing right to reimbursement until 1958 when title IV of the International Claims Settlement Act of 1949 was passed; consequently, no claim for reimbursement existed at the time of nationalization. Petitioner's knowledge or belief of future rights, in the absence of an existing right, is immaterial. Petitioner's heavy reliance on the fact that Czechoslovakian assets were available for seizure at the time of nationalization as a distinguishing factor from cases previously decided in this area is misplaced, for the existence of the assets created no rights.

In *Estate of Zinaida Bary* v. *Commissioner*, *supra*, the question was whether there was any fair market value in 1940 of a claim existing against the Soviet Government for property confiscated in 1918 and 1919. In 1919 the U.S. Government had seized Soviet assets in this

718

country in retaliation for the Soviet seizure of American assets. In November 1933, pursuant to an agreement which has become known as the Litvinov Assignment, the Soviet Government assigned its rights to the property seized by the United States to the United States Government. In 1955 Congress made the proceeds from the property available to satisfy claims for the property expropriated in 1918 and 1919.

In holding that there was no value of the claim in 1940, we stated in *Estate of Zinaida Bary*, T.C. Memo. 1965-322:

> It may be true that in 1940 there existed some moral obligation on the part of the United States Government to devote funds derived from assigned assets to such a claim as decedent held. However, such a moral obligation in the hands of decedent was nothing more than an unenforceable inchoate right or claim which would have no determinable value in 1940. The decedent could not sue or even file a claim against the United States for any part of the $9,000,000 fund held in the Treasury under the Litvinov Assignment. The claim being nothing more than a moral obligation, would not have been includable as an item of value in decedent's gross estate when she died in 1940.

In the present case, in 1948 and 1950, the petitioner had nothing more than an expectancy, or hope for an interest in Czechoslovakian assets in this country. Such an expectancy had no value. It was not a claim for reimbursement as set out in the regulations. Consequently, petitioner's entire basis in the Low firm was deductible at the time of nationalization. Cf. *Remington Typewriter Company*, *supra* at 888–889. His basis in the Low firm in 1962 was zero and no amount is deductible in that year for the property confiscated.

Since petitioner has not presented any evidence relating to the $37.80 costs claimed for preparation of his claim against the Foreign Claims Settlement Commission, we find he has failed to meet his burden of proof on that issue and consequently no amount is deductible.

*Decision will be entered for the respondent.*