Estate of Frank Fuchs, Deceased, Edith Fuchs, Executrix and Edith Fuchs, Surviving Wife Individually v. Commissioner.
Estate of Fuchs v. Commissioner
Docket No. 6546-66.
United States Tax Court
T.C. Memo 1968-188; 1968 Tax Ct. Memo LEXIS 106; 27 T.C.M. (CCH) 916; T.C.M. (RIA) 68188; August 29, 1968. Filed Louis A. Gruhin, 165 Broadway, New York, N. Y., for the petitioner. Robert M. Pearl, for the respondent. FEATHERSTON
Memorandum Opinion FEATHERSTON, Judge: Respondent determined *107 deficiencies in petitioners' joint Federal income taxes as follows: Year
Deficiency
1959
$5,435.69
1960
2,801.16
1961
4,143.81
1962
3,421.97 The sole issue presented for decision is whether petitioner sustained a deductible loss in 1959 arising out of the confiscation of property by the Government of Czechoslovakia in 1953. All the facts have been stipulated. Edith Fuchs, individually and as executrix for the estate of her husband, Frank Fuchs, resided in Jackson Heights, New York, on the date the petition herein was filed. Edith and Frank filed joint Federal income tax returns for the years 1959-1962, inclusive, with the district director of internal revenue, Brooklyn, New York. Edith Fuchs will hereinafter be referred to as "petitioner." In 1947, petitioner inherited a one-half interest in an apartment house located at 8 Masarykova, and sole ownership of an apartment house at 11 Kapucinske, both in Brno, Czechoslovakia. Pursuant to a nationalization program begun in 1945, the Czech Government enacted Law 80/52 Sb., effective January 1, 1953, which compelled owners of buildings with an annual gross rental income of 15,000 crowns or more to deposit *108 the rent in special accounts. From such accounts a real property tax (45 to 50 percent of the gross rent), and an inheritance tax, if any, were deducted. Additionally, at least 30 percent of the gross rent was transferred into a building repair account. Both properties owned by petitioner produced gross annual rents in excess of 15,000 crowns. Efforts by American claimants to regain property interests affected by the Czechoslovakian nationalization measures proved unsuccessful. Equally unsuccessful were the efforts of the Department of State and the American Embassy in Prague to obtain compensation for American nationals whose interests had been affected by the Czechoslovakian nationalization measures. Although the Government of Czechoslovakia agreed to settle claims in 1949, negotiations were suspended due to an apparent lack of desire or inability on the part of the Czech delegation to offer any reasonable settlement. In 1947, steel mill equipment had been ordered by a Czechoslovakian enterprise from an American manufacturer. The equipment became subject to blocking action by the Secretary of the Treasury on January 17, 1952, because the exportation of goods to Czechoslovakia *109 was prohibited under the United States export control laws, and on March 25, 1954, the Secretary ordered that the mill equipment be sold. In 1955, after the sale of this equipment, the Czechoslovakian Government asked that negotiations be reopened. As of June 1961, no working agreement had been produced. The proceeds of the sale of the mill equipment, $8,990,282.54, were placed in United States banks for the account of the Czechoslovakian owners, but were blocked by the United States Government pending consideration and settlement of American property claims against Czechoslovakia. In 1958, Congress amended the International Claims Settlement Act of 1949 by enacting Title IV thereof which for the first time provided for claims against Czechoslovakia (Pub. L. 85-604 (Aug. 8, 1958), 72 Stat. 527). Under the terms of this Act, the proceeds of the sale of the steel mill equipment were placed in a fund designated as the "Czechoslovakian Claims Fund," which was to be used to satisfy certain claims by American nationals against Czechoslovakia arising from the nationalization of property. Claims were to be filed with the Foreign Claims Settlement Commission. On June 11, 1959, petitioner *110 filed a claim under section 404 of Title IV of the International Claims Settlement Act of 1949, as amended, with the Foreign Claims Settlement Commission of the United States. In the claim, petitioner asserted a value of $55,000 for the property at 8 Masarykova and a value of $20,000 for the property at 11 Kapucinske. In a statement attached to the claim, which was signed on May 6, 1959, petitioner stated as follows with respect to the property located at 11 Kapucinske: After the Communist putch [sic] in March, 1948, however, no reports regarding the house were sent to me anymore, no income from rental was deposited into 918 my bank account in Brno, and requests for accounting were denied. I could not ascertain whether I am still holder of title, since the Czechoslovak Government refuses to give information either directly or through an attorney. Since I am deprived of control, and as I assume also of the title, the house must be considered as confiscated since March, 1948. In its proposed decision, which became final, the Foreign Claims Settlement Commission of the United States found that both of the above properties had gross rental income of 15,000 crowns or more and *111 that such property was taken by the Government of Czechoslovakia without compensation on January 1, 1953. It also found, inter alia, that the value of petitioner's interests in the apartment houses at 8 Masarykova and 11 Kapucinske were $47,300 and $11,000, respectively, and it made awards in these amounts. The Foreign Claims Settlement Commission completed its program by September 15, 1962, the statutory completion date. It issued decisions on 3,976 claims and made 2,630 awards totaling $113,645,205. Since the fund available for distribution was less than the total awards, awards in excess of $1,000 (awards of less than $1,000 were paid in full) were paid on a pro rata basis. Petitioner's 1962 tax return indicates that the pro rata payment made out of the Czechoslovakian Claims Fund to her in respect of these properties was $5,312.74. In her income tax return for 1962, petitioner deducted $77,000.73 as a loss from the confiscation of the apartment houses in Brno, Czechoslovakia, and carried back the unused portion thereof against income reported in the joint returns filed in 1959, 1960 and 1961. Petitioner now contends that the proper year for deduction of the loss was 1959, *112 when the Foreign Claims Settlement Commission began to process claims against the Czech Government. The question presented is whether, under section 165(a) [1] and (c), [2] 1959 is the proper year in which to claim the loss. Respondent concedes that petitioner suffered a deductible loss, but takes the position that the proper year for deduction was 1953, the year the property was effectively nationalized. For purposes of section 165(a), a loss deduction may be postponed if in the year the casualty or other event occurs, there exists a claim for reimbursement with respect to which there *113 is a "reasonable prospect" of recovery. Sec. 1.165-1(d)(2)(i), Income Tax Regs. Petitioner contends that a reasonable prospect of recovery of her losses existed at least until 1959, when Title IV of the International Claims Settlement Act of 1949, 72 Stat. 527, became effective. We cannot agree. The major stumbling-block for petitioner is our decision in Harry J. Colish, 48 T.C. 711 (1967), in which we held that a loss on nationalization of Czech property occurred in the year of nationalization, not at a later date. As we stated in Colish, supra, at 716: At the time of nationalization it was evident that the government of Czechoslovakia did not intend to reimburse American nationals for their interests which were expropriated. No consideration was provided for in the nationalization decree and none was paid. The petitioner would have had to have been an "incorrigible optimist" to have expected payment from that source, and the tax law does not require a taxpayer to be of that species in this type of a situation. United States v. White Dental Co., 274 U.S. 398 (1927); Peter S. Elek, 30 T.C. 731 (1958); *114 Wyman v. United States, 166 F. Supp. 766; Paul H. Schweitzer v. Commissioner, 376 F. 2d 30 (C.A. 3, 1967), affirming a Memorandum Opinion of this Court. In Colish, the petitioner based his contention that he had a reasonable prospect of recovery on the ground that he expected to receive compensation from the United States Government out of blocked Czech assets. Here, petitioner attempts to distinguish Colish on the ground that her expectation of recovery was based on the prospect that the Czech Government would agree to settle the claim in the interest of 919 comity among nations. Implicit in this argument, however, is the recognition that petitioner had no enforceable claim against the Government of Czechoslovakia. As of 1953, petitioner's only hope that she would receive compensation depended upon action by the United States Government, either by negotiating an international agreement calling for reimbursement by Czechoslovakia or by application of Czech assets located in this country. On this record we cannot say there was any reasonable prospect in 1953 that either of these two possibilities would occur. The United States might or might not prosecute *115 petitioner's claim for reimbursement pursuant to an international agreement, as it saw fit. Cf. Emil Stern, 5 B.T.A. 89, 93-95 (1926). Moreover, as indicated above, the Czechoslovakian steel mill equipment was not sold until 1955, and the International Claims Settlement Act was not amended until 1958 to provide for claims against Czechoslovakia. Nor can we agree with petitioner that our decision in Colish was incorrect. We hold that petitioner suffered a loss in 1953 when her property was effectively nationalized by the Government of Czechoslovakia, and that no reasonable prospect of recovery existed after that date. This being the case, we need not consider petitioner's argument concerning the applicability of Code section 172, which only applies to losses occurring in taxable years ending after December 31, 1958. See sec. 172(b) (1) (D). Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended. ↩
2. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * * (c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - (1) losses incurred in a trade or business; * * * (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. * * *↩