Richard Robinson and Marcia Robinson, a/k/a Marcia Korn v. Commissioner.
Robinson v. Commissioner
Docket Nos. 1785-69, 3734-69.
United States Tax Court
T.C. Memo 1972-156; 1972 Tax Ct. Memo LEXIS 102; 31 T.C.M. (CCH) 774; T.C.M. (RIA) 72156; July 24, 1972
Edward I. Haligman and Michael Korn, 15353 Weddington, Sherman Oaks, Calif. *103 , for the petitioners. John D. Moats, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined deficiencies in petitioners' Federal income tax for 1965, 1966 and 1967 in the amounts of $1,356.60, $1,826.44 and $1,676.41, respectively. The issues for decision are: (1) Whether petitioners are entitled to a deduction under section 165(a) [1] in the taxable year 1965 for losses attributable to the expropriation of an interest in real property located in Poland; (2) assuming that the loss is properly deductible in the taxable year 1965, whether petitioners have satisfied the burden of proof by introducing sufficient evidence to establish the amount of the loss; and (3) assuming that the loss is properly deductible in the taxable year 1965 and that petitioners have satisfactorily proved the amount of the loss, whether petitioners are entitled to a loss carryover for the taxable years 1966 and 1967. Findings of Fact Some of the facts have been stipulated; they are so found and incorporated herein by this reference. Petitioners, *104 Richard L. Robinson and Marcia Robinson, were legal residents of Denver, Colorado, on April 17, 1969, the date they filed their first petition, and were legal residents of Omaha, Nebraska, on July 18, 1969, the date they filed their last petition. They filed joint Federal income tax returns for 1965, 1966 and 1967 with the district director of internal revenue, Denver, Colorado. Richard L. Robinson is a petitioner herein only because he filed joint returns with his wife, Marcia Robinson, who will hereinafter be referred to as petitioner. Petitioner was born in Poland in 1933 under the maiden name of Marcia Korn. Petitioner immigrated with her family to the United States in 1941 and became a naturalized American citizen on July 22, 1948. At all material times thereafter petitioner was an American citizen and resident. Petitioner's father, Leopold Korn (hereinafter referred to as Korn), purchased in Lodz, Poland, several apartment houses and the land upon which they were located (hereinafter collectively referred to as the Korn real property). Korn purchased the Korn real property sometime between 1930 and 1934 for $100,000. One-half of the Korn real property was purchased in Korn's *105 name; the remaining one-half was purchased in the name of Korn's wife. [2]
On December 23, 1938, Korn divested himself of any remaining interest in the Korn real property by transferring a three-twelfths interest in such property to his wife and a one-twelfth interest to each of his three children (including petitioner). Korn received no financial consideration for transferring his remaining one-half interest in the Korn real property to his wife and children. During the years 1946 through 1951 petitioner and her family diligently petitioned the municipal and judicial authorities in Lodz in attempting to determine the status of the Korn real property. These attempts were futile as the Lodz authorities did not respond to the inquiries of petitioner and her family. A former caretaker *106 of the Korn real property informed petitioner and her family that the City of Lodz was administering the Korn real property during the years 1946 through 1951. Since the Lodz authorities refused to answer inquiries of petitioner and her family, petitioner and her family assumed as of 1951 that the Korn real property had been appropriated by the Polish governmental authorities. Although the Korn real property has never been formally nationalized by the Polish government, petitioner was in effect deprived of her relevant incidents of 776 ownership of her one-twelfth interest in the Korn real property sometime between 1946 and 1951. Petitioner's one-twelfth interest in the Korn real property was, thus, expropriated by the Polish governmental authorities sometime between 1946 and 1951. Moreover, from the years 1951 through 1960, petitioner had no reasonable prospect of being reimbursed for the expropriation of her one-twelfth interest in the Korn real property. Poland and the United States executed, the Polish Claims Agreement of 1960 to authorize the Foreign Claims Settlement Commission (hereinafter referred to as the Commission) to receive and settle claims of United States nationals *107 with respect to property that was nationalized or otherwise "taken" by the Polish government. Subsequent to the execution of the Polish Claims Agreement of 1960, petitioner and her family again initiated inquiries with the Lodz authorities concerning the status of the Korn real property. In August 1961 petitioner and her family received a certification from the District Court of Lodz, Department of Public Documents, dated August 22, 1961. This certification indicated that one Izaak Goclawski had acquired the Korn real property by inheritance proceedings in 1953, and that Izaak Goclawski had subsequently sold the Korn real property to a third party. On September 29, 1961, petitioner filed a claim with the Commission in which she asserted her claim for an alleged loss of her interest in the Korn real property. The claim was submitted under the Polish Claims Agreement of 1960 and the International Claims Settlement Act of 1949, as amended, 64 Stat. 13 (1950), 22 U.S.C. 1623(a) (1958). The Commission issued a Final Decision with respect to petitioner's claim on October 27, 1965. In its Final Decision the Commission determined that petitioner was fraudulently *108 deprived of her interest in the Korn real property and that petitioner was entitled to $19,525, with interest thereon at 6 percent per annum from January 1, 1956, to July 1, 1960. [3] Pursuant to the Final Decision, petitioner received $1,794.74 in 1966, $950 in 1967, and approximately $350 per year in the years subsequent to 1967. In its Final Decision the Commission determined as findings of fact and law that the Korn real property constituted abandoned property within the meaning of Article 34 of the Polish Law of March 8, 1946 (Dz. U. 1946, No. 13, Item 87) and that petitioner's interest in the "abandoned" Korn real property was taken on January 1, 1956. In her returns for 1965, 1966 and 1967 petitioner claimed loss deductions under section 165(a) in the amounts of $7,876.85, $10,029.25, and $5,169.86, respectively. Respondent disallowed the entire amount of each of these claimed loss deductions. Ultimate Findings of Fact Petitioner was deprived of all relevant incidents of ownership with respect to her one-twelfth interest in the Korn real property sometime between 1946 and 1951. Petitioner's one-twelfth interest *109 in the Korn real property was thus expropriated by the Polish governmental authorities sometime between 1946 and 1951. Opinion This case presents the question of whether petitioner is entitled to a loss deduction under section 165 with respect to her one-twelfth interest in the Korn real property which petitioner contends was expropriated in the taxable year 1965. Respondent contends that petitioner has failed to carry her burden of proving that she sustained an expropriation loss in fact in 1965. We agree with respondent. Section 165 provides, in pertinent part, as follows: (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. The regulations under section 165(a) provide that "a loss must be evidenced by closed and completed transactions, fixed by identifiable events, and * * * actually sustained during the taxable year." Section 1.165-1(b), Income Tax Regs. In addition, section 1.165-1(d)(2)(i), Income Tax Regs., provides, in pertinent part, as follows: If a casualty or other event occurs which may result in a loss and, in the year of such casualty or event, there exists *110 a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be 777 received is sustained, for purposes of section 165, until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Whether a reasonable prospect of recovery exists with respect to a claim for reimbursement of a loss is a question of fact to be determined upon an examination of all facts and circumstances. * * * See also United States v. White Dentalco., 274 U.S. 398 (1927); Fuchs v. Commissioner, 413 F. 2d 503 (C.A. 2, 1969), affirming a Memorandum Opinion of this Court; and Harry J. Colish, 48 T.C. 711 (1967). Petitioner argues, in effect, on brief as follows: (1) the earliest year in which her interest in the Korn real property could have been expropriated was 1961, since petitioner and her family were not informed by the District Court of Lodz until 1961 that legal title to the Korn real property had been "inherited" in 1953 by one Izaak Goclawski, and that said Izaak Goclawski had subsequently sold the Korn real property to a third *111 party; (2) a claim for reimbursement of the loss did exist in the year in which the expropriation loss occurred, i.e., a claim for compensation was filed by petitioner with the Commission in 1961; (3) petitioner's prospects of recovering on her claim for reimbursement were reasonably good; and (4) petitioner was not capable of determining her loss with "reasonable certainty" until the Commission issued its Final Decision with respect to petitioner's claim in 1965. We are not convinced by petitioner's argument. Her argument assumes that an expropriation loss is not deemed to occur until the rightful owner has been deprived of legal title to the property. This assumption is not supported by law. It is clear that deprivation of legal title is not essential for establishing that an expropriation loss has in fact occurred. To the contrary, an expropriation loss is deemed to have occurred in the taxable year when the rightful owner is deprived of his relevant incidents of ownership of property. United States v. White Dental Co., supra at 402; Rozenfeld v. Commissioner, 181 F. 2d 388, 389-390 (C.A. 2, 1950), affirming a Memorandum Opinion of this Court; and *112 Wyman v. United States, 166 F. Supp. 766 (Ct. Cls. 1958). The following considerations have persuaded us that petitioner's one-twelfth interest in the Korn real property was expropriated sometime between 1946 and 1951. In petitioner's claim to the Commission, petitioner asserted (1) that she (in conjunction with other members of the Korn family) submitted frequent inquiries from 1946 to 1951 to the judicial and municipal authorities in Lodz concerning the status of the Korn real property; (2) that, since no response was received, she and her family assumed "governmental administration and/or appropriation"; (3) that a former caretaker did inform petitioner and her family that the City of Lodz was administering the property during the years 1946 through 1951; (4) that the Korn family (including petitioner) made no inquiries with respect to the status of the Korn real property between 1951 and 1960; and (5) that the Korn family (including petitioner) instituted additional inquiries to the Lodz authorities in 1960 only after execution of the Polish Claims Agreement of 1960. Although the Korn real property was never formally nationalized by the Polish government, this *113 factor is not controlling. A decree may be a mere formality. Harry J. Colish, supra at 716. Once the taxpayer's use and control of his property is so restricted that it technically constitutes an expropriation, it becames immaterial that the restriction was not legally authorized under the laws of the restricting nation. Rozenfeld v. Commissioner, supra at 389; and Wyman v. United States, supra at 770. In the instant case the Lodz authorities administered the Korn real property between 1946 and 1951 and refused to answer petitioner's inquiries concerning the status of the property. Petitioner and her family (1) maintained no physical control of the Korn real property (i.e., either personally or through appointed representatives); (2) received no proceeds from the property's usage, [5] and (3) could not dispose of their respective interests in the property absent a clarification of the status of their collective property interest. Accordingly, as we have stated in our findings of fact, we have determined that petitioner was deprived of her relevant rights of ownership in her one-twelfth 778 interest in the Korn real property sometime between *114 1946 and 1951 and, thus, that petitioner's one-twelfth interest in the Korn real property was expropriated sometime between 1946 and 1951. [6] We do not find it necessary to determine the precise year of the loss, since the ultimate result is the same regardless of whether the loss was actually sustained in any of the years 1946 to 1951, inclusive. *115 Even though petitioner's property interest was technically expropriated between 1946 and 1951, petitioner would still be entitled to a section 165 loss deduction in 1965 if she could establish that she had a reasonable prospect of being reimbursed during each of the years from the year of the loss (i.e., sometime between 1946 and 1951) to 1965. See Harry J. Colish, supra at 716-718; and Fuchs v. Commissioner, supra at 507-508. We do not believe that petitioner has sustained her burden of proof with respect to this point. Petitioner and her family assumed in 1951 that the Korn real property had been "administered and/or appropriated" by the municipality of Lodz. Furthermore, petitioner and her family made no effort to contact the Polish authorities during the years 1951 through 1960 with respect to the Korn real property. Finally, petitioner and her family stated in effect in their claim to the Commission that they did not anticipate that the Polish government would reimburse them for their expropriated property interest. Thus, as we have stated in our findings of fact, petitioner had no reasonable basis during the period from 1951 through 1960 for believing *116 that she would be reimbursed for the expropriation of her one-twelfth interest in the Korn real property. [7] The fact that petitioner did finally receive in the taxable year 1966 and in subsequent taxable years some compensation for her expropriated property interest does not establish that petitioner had a reasonable prospect of being reimbursed during the years 1951 through 1960. See Fuchs v. Commissioner, supra at 508. Therefore, since petitioner did not prove that she had a reasonable propect of being reimbursed during each of the years between 1951 and 1965, petitioner is not entitled to a section 165 loss deduction in 1965. Finally, since petitioner is not entitled to a section 165 loss deduction for the taxable year 1965, petitioner is accordingly not entitled to a loss carryover under section 172 for the taxable years 1966 and 1967. Decisions will be entered for the respondent. 779 Footnotes
1. All section references are to the Internal Revenue Code of 1954, unless otherwise indicateed.↩
2. We are unable to ascertain precisely what interest the Korn family owned in the Korn real property. The transcript indicates that the Korn family owned the entire interest in the Korn real property. However, the Foreign Claims Settlement Commission's Final Decision date October 27, 1965, indicates that the Korn family owned only a one-half interest in the Korn real property as of August 20, 1948.↩
3. The interest computation amounted to $5,320.56.↩
5. In petitioner's claim to the Commission petitioner claimed compensation for lost rental income from 1948 through 1960. We are not able to ascertain whether petitioner received any rental income for 1946 and/or 1947, as there is no evidence in the record pertaining to this specific point. ↩
6. Section 165 and the regulations promulgated thereunder are not applicable to this determination, since chapter 1 of the 1954 Code applies only to years commencing after December 31, 1953. Secs. 7851(a)(1)(A) and 7807(a), I.R.C. 1954. The years 1946 through 1951 are governed by the 1939 Code. Sec. 29.23(e)-1 of Regs. 111, promulgated under the 1939 Code, provided, in pertinent part, as follows: In general losses for which an amount may be deducted from gross income must be evidenced by closed and completed transactions, fixed by identifiable events, bona fide and actually sustained during the taxable period for which allowed. Substance and not mere form will govern in determining deductible losses. * * * The evidence in the record supports the finding that the Korn real property was appropriated sometime between 1946 and 1951. If rental income was received by petitioner from the Korn real property in 1946 and 1947, sec. 29.23(e)-1, Regs. 111, would justify a finding that the expropriation loss occurred either in 1949 or 1951. That is, either 1949 or 1951 would be the appropriate loss year, since the termination of rental income in 1949 and the termination of reasonable anticipation of recovery in 1951 would constitute fixed, identifiable events. If, however, no rental income were received in 1946 and 1947, either 1946 or 1951 would constitute the appropriate loss year - i.e., the fixed, identifiable event with respect to 1951 is the same as indicated above, and with respect to 1946 is the termination of rental income. Moreover, in each of these years, the Lodz authorities administered the property and, correspondingly, petitioner was deprived of usage and possession of the property. We realize that sec. 4(h) of the International Claims Settlement Act provides that all actions of the Foreign Claims Settlement Commission shall be final and conclusive on all questions of law and fact and not subject to judicial or administrative review. However, the Commission's findings of fact that petitioner and her family abandoned the Korn real property within the meaning of Polish law, Article 34 of the Law of March 8, 1946, and that the Korn real property was "taken" by the Polish government on January 1, 1956, were made solely to enable the Commission to rule favorably on petitioner's (and her family's) claim. We believe that these findings should be conclusive only with respect to the context of whether petitioner was entitled to compensation for the expropriation of her property interest by the Polish authorities. Moreover, since we have no idea of what factors and evidence were considered by the Commission in making its findings, we feel that these findings should not be determinative upon this Court in the instant case. Nevertheless, this issue is moot, since the ultimate result will be the same regardless if the expropriation loss occurred between 1946 and 1951 or in 1956.↩
7. Due to the execution of the Polish Claims Agreement of 1960 petitioner did have a reasonable basis from 1960 through 1965 for assuming that she would be at least partially reimbursed for her expropriated property interest.↩