T.C. Summary Opinion 2004-174

UNITED STATES TAX COURT

NASSER AND SHAHPAR GOLSHANI, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11286-03S.          Filed December 27, 2004.

<u>Michael D. Daniels</u>, for petitioners.

<u>Valeri L. Makarewicz</u>, for respondent.


PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect at the time the petition was filed.  The
decision to be entered is not reviewable by any other court, and
this opinion should not be cited as authority.  Unless otherwise
indicated, subsequent section references are to the Internal
Revenue Code in effect for the year in issue, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

Respondent determined that petitioners are liable for a deficiency in their 1999 Federal income tax of $4,009, an addition to tax under section 6651(a)(1) of $1,002.25, and a penalty pursuant to section 6662(a) of $801.80. The issues for decision are: (1) Whether petitioners are entitled to deduct a net operating loss carryover attributable to losses from the expropriation of four parcels of property by the Iranian Government; (2) whether petitioners are liable for the delinquency addition to tax under section 6651(a)(1); and (3) whether petitioners are liable for the accuracy-related penalty under section 6662(a).

## Background

Some of the facts have been stipulated, and they are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioners resided in Los Angeles, California.

Petitioners were citizens and residents of Iran prior to 1988. Petitioner, Nasser Golshani (hereinafter petitioner), worked as a civilian engineer in Iran prior to 1970. In the early 1970s petitioner formed Fabris Construction Co. (Fabris) with two other individuals.[1] Fabris did business with the Government of Iran. From approximately 1970 through 1975,

---

[1] While the record is not entirely clear, the parties appear to assume that Fabris was a joint venture in which petitioner had a one-third interest.

petitioner and his associates purchased four business properties in Iran for development. Petitioner invested substantial sums of money for purchase of the properties and for improvements and equipment. While the cost of the properties and improvements is not entirely clear, petitioner asserts that the fair market value of his one-third investment interest in the properties exceeded one million dollars in 1994/1995.

In 1979 the Shah of Iran was deposed in a revolution. The Ayatollah Khomeini was installed as the new leader of Iran.[2] The Iran-Iraq war commenced in 1981 and ended in approximately 1988. About that time, petitioners and their children escaped from Iran and gained political asylum in the United States.

There were dramatic changes in petitioner's business after the 1979 revolution and during the Iran-Iraq war. As a person of Jewish faith, he was excluded from business opportunities with any governmental units. Additionally, revolutionaries occupied some of the land and improvements and also appropriated equipment. With respect to one of the parcels of property in Mobarak Abad (Tehran), persons began building homes on the land in approximately 1981 and 1982. Petitioner and his associates were unable to prevent the occupation or remove persons from the

---

[2] A detailed account of the events in Iran is set forth in Continental Ill. Corp. v. Commissioner, 94 T.C. 165 (1990); Halliburton Co. v. Commissioner, 93 T.C. 758 (1989), affd. 946 F.2d 395 (5th Cir. 1991); and Moshrefzadeh-Sani v. Commissioner, T.C. Memo. 1992-592.

property.  One of the other parcels of property, next to a railroad station, was taken over by the Government and a deed was changed in 1984 to reflect new ownership.  Petitioner was also investigated by the revolutionary government for a few years after 1979.

During the period after 1979 through the early 1990s petitioner, through his business associates, continued attempts to obtain access to the properties.  The attempts included, among other things, payments of large amounts of cash to persons having some power in the revolutionary government.  Petitioner continued to stay in contact with his former business partners even after he came to the United States in 1988 in the hope of reclaiming the expropriated properties or receiving some compensation. Petitioner knew of some property owners who were successful in having their property returned after the revolution.

Petitioner and his business associates were unsuccessful in their attempts to reclaim the properties.  Petitioner has not received any compensation relating to his interest in the four parcels of property expropriated by the Iranian Government. Petitioner did not institute any court action in an attempt to regain the expropriated properties.

On December 10, 2000, petitioners filed their 1999 Federal income tax return.  Petitioners received an automatic 4-month extension of the required filing date until August 15, 2000, but

did not request any further extensions.  On their 1999 return, petitioners deducted a net operating loss (NOL) carryover in the amount of $813,814.  An NOL worksheet attached to the 1999 return reported that the NOL in the amount of $929,297 had been carried forward from tax year 1995 and that portions of the NOL had been previously used in tax years 1996, 1997, and 1998.[3]  Although not specifically stated in either their 1995 or 1999 returns, there is no dispute that the NOL was attributable to losses claimed from the expropriation of their properties in Iran.

On May 13, 2003, respondent issued to petitioner a notice of deficiency for 1999.  Respondent disallowed the NOL carryover, and determined a deficiency of $4,009.  Respondent further determined that petitioners were liable for the delinquency addition to tax and the negligence penalty.

_____

[3]  At trial, petitioners asserted that they initially claimed the expropriation losses in 1991 instead of 1995. Petitioners filed a motion to dismiss for lack of jurisdiction (motion), arguing that the notice of deficiency for 1999 was invalid because it incorrectly determined that the NOL carryover on their 1999 return originated in 1995 rather than in 1991.  The Court denied petitioners' motion.  Petitioners' 1991 return was not made part of the record in this case, and their assertion that the losses originated in 1991 was unsubstantiated and contradicted by statements in their 1995 return.  E.g., Statement 1 attached to their 1995 return provided:  "the taxpayer hereby elects to relinquish the entire carryback period with respect to the net operating loss incurred in the taxable year ending December 31, 1995."  In any event, even if petitioners did initially claim the losses on the 1991 return, the notice of deficiency was sufficient to give petitioners notice that respondent was disallowing the NOL that petitioners carried forward to their 1999 return.

## Discussion

The issue for decision is whether petitioners sustained losses in 1995 from the expropriation of four parcels of property. Section 165(a) provides for the deduction of losses sustained during the taxable year for which no compensation is received. In the case of individuals, section 165(c) limits the deduction to losses incurred in a trade or business or in any transaction entered into for profit.[4] In order to be deductible, a loss must be evidenced by a closed and completed transaction, fixed by identifiable events, and actually sustained during the taxable year. Boehm v. Commissioner, 326 U.S. 287, 291-292 (1945); sec. 1.165-1(b), Income Tax Regs. A loss is only deductible for the taxable year in which such loss is sustained. Sec. 1.165-1(d)(1), Income Tax Regs. The determination of whether a loss occurred during a particular taxable year is purely one of fact. Korn v. Commissioner, 524 F.2d 888, 890 (9th Cir. 1975), affg. T.C. Memo. 1973-258. A critical inquiry is to focus on the year that the taxpayer loses control over and possession of the property at issue. United States v. S.S. White Dental Mfg. Co., 274 U.S. 398 (1927).

In general a taxpayer bears the burden of proof. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The burden

---

[4] Expropriation losses are not casualty or theft losses for purposes of sec. 165. Powers v. Commissioner, 36 T.C. 1191, 1192-1193 (1961).

as to a factual issue relevant to the liability for tax may shift to the Commissioner if the taxpayer introduces credible evidence and satisfies the requirements under section 7491(a)(2) to substantiate items, maintain required records, and fully cooperate with respondent's reasonable requests.  Sec. 7491(a). In the present case, the burden of proof remains on petitioners because they have not established that they have complied with the requirements of section 7491(a).  In any event, the disposition of this case does not depend upon the burden of proof.

Petitioners assert that the Iranian revolutionary government expropriated the properties in 1979.  Petitioners remained in Iran until they came to the United States in 1988.  Petitioners assert that as a result of their continuing efforts to reclaim the properties, the losses actually occurred at a later date.  We have no doubt that petitioners sustained losses upon the expropriation of the properties, and the question arises as to the amount of the losses and the year or years of the losses.[5]

Section 1.165-1(d)(2)(i), Income Tax Regs., provides that if a casualty or other event occurs which may result in a loss and

---

[5]  While the record does not establish the exact amount of petitioners' losses, petitioner presented copies of deeds and credible testimony as to the cost of the properties involved. However, as a result of our conclusion that the losses occurred prior to the year in which they were claimed, and are therefore not deductible, we need not reach any conclusion as to the amount of the loss.

there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss is sustained under section 165 until it can be ascertained with reasonable certainty whether such reimbursement will be received.  Whether a reasonable prospect of recovery exists is a question of fact.  See Halliburton Co. v. Commissioner, 93 T.C. 758, 770 (1989), affd. 946 F.2d 395 (5th Cir. 1991); Colish v. Commissioner, 48 T.C. 711, 715 (1967); sec. 1.165-1(d)(2)(i), Income Tax Regs.  The prospect of recovery must be based upon a legal right to claim reimbursement from a third party in the year the loss occurs.  Halliburton Co. v. Commissioner, supra at 772; Colish v. Commissioner, supra at 717; sec. 1.165-1(d)(2)(i), Income Tax Regs.  In this connection we note that we concluded in Halliburton Co. v. Commissioner, supra at 780, as follows:

> As of December 31, 1979, Iranian political power was in a state of disarray, and the United States had been unable even to commence negotiations with Iran to resolve the crisis even though a principal stumbling block had been removed, i.e., the Shah had left the United States for Panama.  Not until the fall of 1980, after a series of events occurred in 1980, including the Iranian clerical faction's assumption of power, the outbreak of the Iran-Iraq war, increased United States economic sanctions against Iran, the failed American rescue mission, the death of the Shah, and the impending change in the U.S. Administration, did Iran make overtures to settle the crisis.  If anything, these critical events are so clearly independent of the factual circumstances that existed as of December 31, 1979, as to reinforce the conclusion that the elements of a reasonable prospect of recovery were absent, rather than present, as of that date.  Equally clearly, the fact that the Algiers Accords came into being in 1981 is not, in and of itself, an indication that such

a prospect of recovery existed.  <u>Colish v.
Commissioner</u>, <u>supra</u> at 717; <u>Estate of Fuchs v.
Commissioner</u>, <u>supra</u> at 508.

Whether petitioners claimed the losses in 1991, as argued in
the motion to dismiss, or in 1995 as it appears in this record,
we conclude that the losses occurred at a date well before that
time.  Respondent's determination is sustained as to the
deficiency.

<u>Addition to Tax for Failure To File Timely Under Section 6651(a)</u>

The Commissioner has the "burden of production in any court
proceeding with respect to the liability of any individual for
any * * * addition to tax" under section 6651(a).  Sec. 7491(c).
To meet this burden, the Commissioner must come forward with
sufficient evidence indicating that it is appropriate to impose
the relevant penalty or addition to tax.  <u>Higbee v. Commissioner</u>,
116 T.C. 438, 446 (2001).  Once the Commissioner meets his burden
of production, the taxpayer must come forward with evidence
sufficient to persuade a court that the Commissioner's
determination is incorrect.  <u>Id.</u> at 447.  The taxpayer also bears
the burden of proof with regard to issues of reasonable cause,
substantial authority, or similar provisions.  <u>Id.</u> at 446.

In the present case, respondent has satisfied his burden of
production under section 7491(c) by establishing that
petitioners' 1999 income tax return was not timely filed.  In
this connection petitioners do not assert, nor did they present

any evidence, that the 1999 return was received or mailed before the due date, as extended.

Section 6651(a)(1) imposes an addition to tax of 5 percent per month of the amount of tax required to be shown on the return, not to exceed 25 percent, for failure to timely file a return.  The addition to tax under section 6651(a)(1) is imposed unless the taxpayer establishes that the failure was due to reasonable cause and not willful neglect.

The record is clear that the return was not timely filed and there is no evidence that would establish that the failure to timely file was due to reasonable cause and not willful neglect. Respondent is sustained on this issue.

Accuracy-Related Penalty Under Section 6662(a)

The Commissioner also has the "burden of production in any court proceeding with respect to the liability of any individual for any penalty" under section 6662(a).  Sec. 7491(c); Higbee v. Commissioner, supra at 446-447.  Once the Commissioner meets his burden of production, the taxpayer has the responsibility to come forward with evidence sufficient to persuade the Court that the Commissioner's determination is incorrect.  Higbee v. Commissioner, supra at 447.

Section 6662(a) provides that a taxpayer may be liable for a penalty of 20 percent of the portion of an underpayment of tax

attributable to negligence or disregard of rules or regulations.[6] Sec. 6662(a), (b)(1) and (2). "Negligence" is any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws. See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Moreover, negligence is the failure to exercise due care or the failure to do what a reasonable and prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). "Disregard" includes any careless, reckless, or intentional disregard of rules or regulations. See sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs. Notwithstanding section 6662(a), no penalty will be imposed with respect to any portion of an underpayment if it is shown that there was "a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion." Sec. 6664(c)(1).

Respondent determined that petitioners are liable for an accuracy-related penalty attributable to negligence or disregard of rules and regulations.

On the basis of the record, we conclude that petitioners made a reasonable attempt to comply with the Internal Revenue

---

[6] Other types of underpayments that may give rise to the imposition of an accuracy-related penalty under sec. 6662(a) and (b) do not apply in this case. Respondent did not present evidence that there was either a substantial or gross "valuation misstatement" under sec. 6662(b)(3), (e), and (h), and we did not make any conclusions as to the value of the expropriated properties. See supra note 5.

Code and that the underpayment of tax was not attributable to negligence. Petitioners claimed an NOL loss carryover in the amount of $813,814 on the 1999 return. We have concluded that petitioners incurred a loss from the expropriation of four parcels of property by the Iranian revolutionary government sometime in the late 1970s or early 1980s. The issue in this case is one of timing. Having reviewed the documentary evidence in this case and considered the testimony of petitioner, we are satisfied that he reasonably believed that there was some hope in recovering some of the expropriated properties or of receiving some compensation for same. While we have concluded that there was not a reasonable prospect of recovery in 1995, that conclusion is based on an analysis of legal precedent relating to the 1979 revolution in Iran. We do not believe petitioners acted recklessly or intentionally disregarded the tax laws in a manner sufficient to apply the accuracy-related penalty. Accordingly, we hold for petitioners on the section 6662(a) penalty.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered for respondent as to the deficiency and addition to tax under section 6651(a)(1), and for petitioners as to the penalty under section 6662(a).</u>