**ESTATE OF Frank FUCHS, Deceased, Edith Fuchs, Executrix, and Edith Fuchs, Surviving Wife Individually, Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 601, Docket 33046.

United States Court of Appeals Second Circuit.

Argued May 21, 1969.

Decided June 27, 1969.

---

Louis A. Gruhin, Brooklyn, N. Y. (Joan T. Harnes, Brooklyn, N. Y., on the brief), for appellant.

David English Carmack, Attorney, Department of Justice (Johnnie M.

Walters, Asst. Atty. Gen., Lee A. Jackson, Jonathan S. Cohen, Attorneys, Department of Justice, on the brief), for appellee.

Before LUMBARD, Chief Judge, FEINBERG, Circuit Judge, and TIMBERS, District Judge.*

FEINBERG, Circuit Judge:

Petitioner appeals individually and as executrix for her husband's estate from a decision of the Tax Court of the United States, 27 CCH Tax Ct.Mem. 916 (1968), C. Moxley Featherston, J., finding income tax deficiencies in the amount of $15,802.63 in petitioner's joint returns filed for the years 1959–1962. The issue, arising under section 165 of the Internal Revenue Code of 1954 and section 1.165-1 (d) of the Regulations, is the proper year for taking a loss due to the nationalization of property by a foreign government. The Government contends that appellant's loss was sustained in 1953; appellant argues principally that from 1953 to at least 1959 she still had a reasonable prospect of recovery of reimbursement for the property, which permitted her to postpone taking the loss.

In 1947, petitioner, a United States citizen, inherited one apartment building and a half interest in a second, both in Brno, Czechoslovakia. Under a Czechslovakian law effective January 1, 1953, the rent from buildings with a gross annual rental of 15,000 crowns or more, a category which included both of petitioner's buildings, was to be paid into special accounts. From these accounts were deducted an inheritance tax, if any, a real property tax of from 45 to 50 per cent of gross rent, and an additional sum of at least 30 per cent of gross rent which was transferred to a building repair account. The building in which petitioner owned a half interest was nationalized outright in February 1953; petitioner apparently retained title to the second building until September 1959, when it was placed under the Czechoslovakian National Administration by governmen-

tal decree. However, she received no income from it from at least 1953 on.

Efforts by the United States Government to arrange some settlement with Czechoslovakia of the claims of American nationals whose property interests had been affected by the nationalization program were not successful. In 1958, Congress amended the International Claims Settlement Act of 1949 to provide for the first time for claims against Czechoslovakia and established a Czechoslovakian Claims Fund containing the proceeds from certain Czechoslovakian mill equipment which the Secretary of the Treasury had blocked and sold in the United States in 1954. 22 U.S.C. §§ 1642–1642(p). On June 11, 1959 petitioner filed a claim pursuant to the Act with the Foreign Claims Settlement Commission of the United States, asserting a value of $55,000 for the apartment house in which she had owned a half interest and $20,000 for the second building. In a written statement to the Commission she said of the latter:

> After the Communist putch [sic] in March, 1948, however, no reports regarding the house were sent to me anymore, no income from rental was deposited into my bank account in Brno, and requests for accounting were denied. I could not ascertain whether I am still holder of title, since the Czechoslovak Government refuses to give information either directly or through an attorney. Since I am deprived of control, and as I assume also of the title, the house must be considered as confiscated since March, 1948.

The Commission found that the buildings had been taken by the Czechoslovakian government on January 1, 1953, the effective date of the special accounts law, and that the value of petitioner's interests were $47,300 and $11,000 respectively in the half-owned and wholly owned buildings. Since the total awards made to claimants under the statute greatly exceeded the funds available to

---

* Chief Judge of the District of Connecticut, sitting by designation.

satisfy them, petitioner eventually received in 1962 a pro rata payment of only $5,312.74 for the two buildings.

In 1962, petitioner deducted the sum of $77,000.73 as a loss for the taking of the buildings and carried back the unused portion of that sum against the income reported in the joint returns for 1959, 1960 and 1961. The Commissioner of Internal Revenue disallowed the deduction on the grounds that the taxpayer's loss occurred in 1953, and the Tax Court upheld this disallowance. For the reasons given below, we affirm.

Section 165 of the Internal Revenue Code of 1954 provides:

Sec. 165. *Losses.*

(a) General Rule.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

\* \* \* \* \* \*

(c) Limitation on Losses of Individuals.—In the case of an individual, the deduction under subsection (a) shall be limited to—

(1) losses incurred in a trade or business;

\* \* \* \* \* \*

(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft.

The applicable provisions of section 23 (e) of the 1939 Code are substantially similar. Appellee concedes that a deduction was allowable to petitioner under this section in 1953, the year the Czechoslovakian government effectively confiscated the buildings in question.[1] Appellant argues that the building that she

wholly owned was not totally nationalized until 1959, and that she was entitled to deduct its loss as of that year. Moreover, she contends that in 1953 there existed a reasonable prospect of recovery of reimbursement for both buildings, and that she was entitled to postpone taking the losses on them until 1959 or 1962, evidently indicating the dates when the Czech claims amendment to the International Claims Settlement Act became effective or when she received her pro rata payment from the Czechoslovakian Claims Fund.[2]

Petitioner's argument that the wholly owned building should be deemed confiscated as of September 1959, the year of its outright nationalization, is not pressed with great conviction. In her statement to the Foreign Claims Settlement Commission in May 1959, she herself pointed out that "the house must be considered as confiscated since March, 1948," stressing her inability to obtain an accounting or even any information about the building. The Foreign Claims Settlement Commission found that the building had been constructively taken by the Czechoslovakian government in January 1953, noting that "the owner of the property, despite the fact that he may have remained the record owner, lost all control over the property and was little more than a collecting agent for the Czechoslovakian Government." The Tax Court similarly held that the property was effectively nationalized in 1953. On appeal petitioner admits that the possibility of a surplus in rentals over the payments made out of the special account was theoretical only, and herself describes the 1953 law as "a form of 'creeping' or 'disguised nationalization' through regulation."

---

1. It is not clear from the record whether the Government conceded, or the Tax Court decided, that the deductibility of petitioner's loss was covered by subsection (1) or (3) of section 165(c). Since the Tax Court's reasoning would be applicable in either event, it is unnecessary to discuss the problems which this choice might raise, see Alvary v. United States, 302 F.2d 790, 796 and n. 3 (2d Cir. 1962);

Binder v. United States, 262 F.Supp. 713 (S.D.N.Y.), aff'd mem., 371 F.2d 440 (2d Cir. 1966).

2. If the losses were held to have been sustained in either year petitioner apparently contends that she could have carried them over to the three years post-1959 or pre-1962 pursuant to § 172 of the 1954 Internal Revenue Code.

Since petitioner lost any effective control over the buildings in 1953, as well as any profits from them, we agree with the Tax Court that for all realistic purposes they were confiscated, and their loss incurred, in 1953. The fact that petitioner may have retained technical title to one of the buildings until 1959 is not persuasive: "the test is a practical one, and does not depend upon an absolute forfeiture of all legal right. * * * The relevant consideration * * * is not the legal consequences of the seizure, but how completely the owner is dispossessed." Rozenfeld v. Commissioner of Internal Revenue, 181 F.2d 388, 390 (2d Cir. 1950). Nor does the fact that the government of Czechoslovakia chose to formalize the taking by an additional decree in 1959 alter the practical realities of the situation. Cf. Harry J. Colish, 48 T.C. 711, 716 (1967).

Petitioner's major argument is based on Regulation 1.165-1(d), which prvoides in part:

> (2) (i) If a casualty or other event occurs which may result in a loss and, in the year of such casualty or event, there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Whether a reasonable prospect of recovery exists with respect to a claim for reimbursement of a loss is a question of fact to be determined upon an examination of all facts and circumstances.

Petitioner claims that she had a right to postpone taking the loss under this section since she had a recognized claim for recompense with a reasonable prospect of recovery. She bases this argument on the contention that victims of foreign nationalization in the recent past have "almost invariably" eventually received some compensation, usually through negotiated compromises, that she was especially justified in relying on this past record in view of the negotiations between the United States and Czechoslovakia concerning the possibility of a settlement of claims, and that this reliance was in fact vindicated when the Foreign Claims Commission made its partial award to her in 1962. Finally, she emphasizes the uncertainties of the situation in 1953 and the difficulty of obtaining accurate information from Czechoslovakia as factors which weigh against the fairness of limiting her to a specific date of constructive confiscation.

While these arguments are not without appeal, they face serious legal obstacles. Whether "a reasonable prospect of recovery exists with respect to a claim for reimbursement" is a question of fact and the burden of establishing that fact is on the taxpayer. See Boehm v. Commissioner of Internal Revenue, 326 U.S. 287, 293–294, 66 S.Ct. 120, 90 L.Ed. 78 (1945). In reaching its determination the Tax Court is entitled to draw reasonable inferences and conclusions from the evidence before it, id., and that determination may not be reversed by this court unless it is clearly erroneous. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 290–291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); see Fleischer v. Commissioner of Internal Revenue, 403 F.2d 403, 405–406 (2d Cir. 1968); Comtel Corp. v. Commissioner of Internal Revenue, 376 F.2d 791, 795–796 (2d Cir.), cert. denied, 389 U.S. 929, 88 S.Ct. 290, 19 L.Ed.2d 280 (1967). Here the Tax Court found that petitioner's only hope for recompense was dependent upon action by the United States Government, either in negotiating a reimbursement agreement with the Czechoslovakian government or applying Czech assets in this country, and that neither of these possibilities constituted a "reasonable prospect" in 1953. We think that that finding is sufficiently supported.

In United States v. S. S. White Dental Manufacturing Co., 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120 (1927), the

leading case in this field, the Supreme Court held that a taxpayer creditor and stockholder of a corporation seized by the German government in 1918 could take a deduction for the loss of the taxpayer's investment in that year. The Court noted that the taxpayer was not required to be an "incorrigible optimist" about the possibility of some eventual recoupment, and held the loss was sufficiently completed at the date of seizure "although later the German government bound itself to repay and an award was made by the Mixed Claims Commission which may result in a recovery." *Id.* at 403, 47 S.Ct. at 600. Petitioner here makes no showing of greater grounds for optimism at the time her property was confiscated than those of the taxpayer in the *White Dental* case. Indeed, in a recent application of the *White Dental* doctrine to a case very similar to the present one, the Tax Court dismissed substantially the same arguments as petitioner makes here in denying a loss deduction in 1962 for property nationalized by the government of Czechoslovakia no later than 1950. Harry J. Colish, 48 T.C. 711 (1967). Pointing out that: "At the time of nationalization it was evident that the government of Czechoslovakia did not intend to reimburse American nationals for their interests which were appropriated," *id.* at 716, the court held that the only other possible hope for recovery, eventual reimbursement by the United States, was not a "reasonable prospect of an existing right to be reimbursed." *Id.* at 717. "The prospect of recovery must be based on firmer ground than the possibility of a gratuitous reimbursement from a third party," *id.*, even when the third party is the United States Government.

■ We think that this interpretation of the regulation is correct and controls the present litigation. At the time of the effective confiscation of petition-

er's property in 1953 there was no likelihood of recovery from the government of Czechoslovakia and no more than a possibility that some reimbursement would be effectuated by the United States Government. That petitioner's subjective faith in the eventual vindication of her rights by her Government may have been great is not sufficient. See Boehm v. Commissioner of Internal Revenue, 326 U.S. 287, 292–293, 66 S.Ct. 120, 90 L.Ed. 78 (1945). Nor is the fact that in 1962, nearly ten years after the seizure, she did receive a partial compensation award from the United States significant in evaluating her "claim for reimbursement" as of 1953. See *White Dental, supra;* Schweitzer v. Commissioner of Internal Revenue, 376 F.2d 30 (3d Cir.), cert. denied, 389 U.S. 971, 88 S.Ct. 467, 19 L.Ed.2d 462 (1967); Estate of Scofield v. Commissioner of Internal Revenue, 266 F.2d 154, 163 (6th Cir. 1959). But cf. Reiner v. United States, 222 F.2d 770 (7th Cir. 1955). In 1953 the prospect of recovery on that claim was far too "nebulous and problematical," *Scofield, supra,* 266 F.2d at 159, to satisfy the requirement of the regulation. While we are not without sympathy for the difficulties of petitioner's situation,[3] we can only repeat the advice this court offered many years ago in Young v. Commissioner of Internal Revenue, 123 F.2d 597, 600 (2d Cir. 1941):

> In cases like this the taxpayer is at times in a very difficult position in determining in what year to claim a loss. The only safe practice, we think, is to claim a loss for the earliest year when it may possibly be allowed and to renew the claim in subsequent years if there is any reasonable chance of its being applicable to the income for those years.

The judgment of the Tax Court is affirmed.

---

3. Congress, too, apparently sympathizes with the problems of those whose foreign property is expropriated and has provided that some expropriation losses sustained after 1958 may be carried over for ten years after the loss is incurred. See Int. Rev. Code of 1954, § 172(b) (1) (D).