MICHAEL KORN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Korn v. Commissioner
Docket No. 7425-70
United States Tax Court
T.C. Memo 1973-258; 1973 Tax Ct. Memo LEXIS 30; 32 T.C.M. (CCH) 1220; T.C.M. (RIA) 73258; November 26, 1973, Filed *30 Petitioner claimed net operating loss carryover deductions for the taxable years 1966, 1967 and 1968 which were based on a foreign expropriation loss claimed for the taxable year 1965. Petitioner was deprived of the relevant incidents of ownership in his interest in the Polish real property not later than 1951. Petitioner had no reasonable prospect of recovery during the years between 1951 and 1960 since the Polish Claims Agreement of 1960 was not executed until 1960. Held: Petitioner is not entitled to the carryover deductions based on the loss claimed for the taxable year 1965 since 1965 was not the proper year for deduction of the loss. Michael Korn, pro se. Sheldon M. Sisson, for the respondent. STERRETT MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent determined deficiencies in petitioner's Federal income taxes as follows: 2 Taxable Year
Deficiency
1966
$1,113.29
1967
1,102.76
1968
855.78
The issues presented for our decision are as follows: (1) Whether petitioner is entitled to a deduction under section 165(a) [1] in the taxable year 1965 for a loss attributable to the expropriation of an interest in real property located in Poland, which deduction if allowable *31 will permit a loss carryover under section 172 for the taxable years 1966, 1967 and 1968; and (2) assuming that the loss is properly deductible in the taxable year 1965, whether petitioner has satisfied his burden of proof by introducing sufficient evidence to establish the amount of the loss. FINDINGS OF FACT Some of the facts have been stipulated and are so found. [2] The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. 3 At the time of the filing of his petition, Michael Korn (hereinafter referred to as petitioner) was a legal resident of Van Nuys, California. He filed his *32 Federal income tax returns for the taxable years 1966, 1967 and 1968 with the district director of internal revenue, Los Angeles, California. Petitioner was born in 1936 in Poland. In 1940 petitioner, together with his family, left Poland and has never returned to that country. Neither has any member of petitioner's immediate family or any family member owning an interest in the building which is the subject of the claimed loss returned to Poland. On July 22, 1948 petitioner became a naturalized citizen of the United States. Petitioner's father, Leopold Korn (hereinafter referred to as Korn), purchased in Lodz, Poland, several apartment houses and the land upon which they were located (hereinafter collectively referred to as the Korn real property) sometime between 1930 and 1934 for $100,000. One-half of the Korn real property was purchased in Korn's name; the remaining one-half was purchased in the name of Korn's wife. On December 23, 1938, Korn divested himself of any remaining interest in the Korn real property by transferring a three-twelfths interest in such property to his wife and a one-twelfth interest to each of his three children, one 4 of whom was petitioner. Korn *33 received no financial consideration for the transfer of his one-half interest in the Korn real property to his wife and children. During the years after World War II, petitioner and his family attempted to ascertain the status of the Korn real property, [3] *34 its administration and physical condition. Through yearly communication with the caretaker of the Korn real property, petitioner and his family ascertained that the property was in good physical condition. In fact, the property had been improved after World War II, although petitioner and his family had nothing to do with the improvements. This caretaker, whom petitioner and his family had left in charge of the Korn real property, also informed petitioner and his family that she was then being employed 5 by the city of Lodz. In 1947, local counsel in the city of Lodz confirmed, through a court certification, that record title of a one-twelfth interest in the Korn real property was in petitioner's name. After fleeing Poland and in the years following World War II to the present, petitioner and his family received no rental income from the property, and petitioner did not know who was collecting this income. In 1947 it was ascertained by petitioner and his family that, because of the political situation in Poland following World War II, it was impossible to withdraw any assets from Poland in any form. Petitioner and his family then believed that, upon improvement of the *35 political situation between the eastern European countries and the United States, they would ultimately be able to reassert or derive some economic benefit from the Korn real property. Petitioner and his family always assumed that the property was legally theirs but they realized that they could not derive any rental income from the property after World War II. Between 1951 and 1961, all petitioner and his family did with respect to the property was to confirm that the property was being physically well maintained. Although there was no formal decree promulgated pursuant to which the expropriation or nationalization took place, petitioner was in effect deprived of his relevant incidents 6 of ownership of his one-twelfth interest in said property not later than 1951. Thus, petitioner's one-twelfth interest was expropriated by the Polish government not later than 1951. From 1951 through 1960 (until the Polish Claims Agreement of 1960 was executed), petitioner had no reasonable prospect of being reimbursed for the loss of his interest in the Korn real property. Poland and the United States executed the Polish Claims Agreement of 1960 to authorize the Foreign Claims Settlement Commission *36 (hereinafter referred to as the Commission) to receive and settle claims of United States nationals with respect to property that was nationalized or otherwise "taken" by the Polish government. Following the execution of the Polish Claims Agreement of 1960, petitioner and his family again attempted to determine the status of the Korn real property by retaining counsel to look into the matter for them. In 1961 petitioner and his family discovered that one Izaak Goclawski had acquired the one-half interest in the Korn real property recorded in the names of petitioner and other Korn family members by inheritance proceedings in 1953. [4] 7 On September 29, 1961, petitioner filed a claim with the Commission in which he asserted his claim for an alleged loss of his interest in the Korn real property. The claim was submitted under the Polish Claims Agreement of 1960 *37 and the International Claims Settlement Act of 1949, as amended, 64 Stat. 13 (1950), 22 U.S.C. 1623(a) (1958).The Commission issued a final decision with respect to petitioner's claim on October 27, 1965. In its final decision, the Commission determined that petitioner was fraudulently deprived of his interest in the property and that petitioner was entitled to $19,525, with interest thereon in the amount of $5,320.56. In its final decision the Commission determined as findings of fact and law that the Korn real property constituted abandoned property within the meaning of Article 34 of the Polish Law of March 8, 1946 (Dz. U. 1946, No. 13, item 87) [5] *38 and that petitioner's interest in the "abandoned" property was taken on January 1, 1956. Petitioner did not contend in his claim before the Commission that he considered the subject property abandoned under the provisions of Article 34 of the Polish Law of March 8, 1946. 8 In his Federal income tax return for 1965, petitioner claimed a loss deduction under section 165(a) in the amount of $25,820.86 [6] and elected under section 172(b) (3) (c) (ii) to have the ten year loss carry forward of section 172(b) (1) (D) apply. In his income tax returns for 1966, 1967 and 1968, 9 petitioner claimed net operating loss carryover deductions in the amounts of $23,007.12, $17,280.97 and $10,804.78, respectively. [7] *39 Respondent disallowed the entire amount of each of these claimed deductions for the latter three years. [8] OPINION This case presents the question of whether petitioner is entitled to net operating loss carryover deductions 10 under section 172(b) (1) (D) [9] for the taxable years 1966, 1967 and 1968 with respect to his one-twelfth interest in the Korn real property which petitioner contends was expropriated in the taxable year 1965. In our determination of this question, we must first decide whether petitioner is entitled to a loss deduction under section 165 with respect to the property for the *40 taxable year 1965. [10] *41 The property 11 is located in Lodz, Poland. It is respondent's position that the petitioner has failed to carry his burden of proving that an expropriation of his interest in the property in fact occured in 1965. Section 165 provides, in pertinent part, as follows: (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. In order to be deductible under section 165(a), "a loss must be evidenced by closed and completed transactions, fixed by identifiable events and * * * actually sustained during the taxable year". Section 1.165-1(b) Income Tax Regs.; Boehm v. Commissioner, 326 U.S. 287, 291-292 (1945); United States v. S. S. White Dental Mfg. Co., 274 U.S. 398 (1927). In addition section 1.165-1(d) (2) (i), Income Tax Regs., provides, in pertinent part, as follows: If a casualty or other event occurs which may result in a loss and, in the year of such casualty or event, there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which *42 reimbursement may be received is sustained, for purposes of section 165, until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Whether a reasonable propsect of recovery exists with respect to a claim for reimbursement of a loss is a question of fact to be determined upon an examination of all facts and circumstances. * * * 12 The determination of whether a loss occurred during the taxable year is purely one of fact. Boehm v. Commissioner, supra at 293. The burden of proof is on the petitioner to establish that the loss is deductible in the taxable year claimed. Burnet v. Houston, 283 U.S. 223, 227 (1931); Boehm v. Commissioner, supra at 294. Respondent, conceding here that petitioner suffered a loss through expropriation, takes the position that the loss was sustained not later than 1951. In support of his position petitioner argues on brief as follows: (1) the earliest year in which his interest in the Korn real property could have been expropriated was 1961 since petitioner and his family did not discover until then that legal title to the property had been "inherited" in 1953 by one Izaak Goclawski; (2) a claim for reimbursement *43 of the loss did exist in the year in which the expropriation loss occurred, i.e., a claim for compensation was filed by petitioner with the Foreign Claims Settlement Commission in 1961; (3) petitioner's prospects of recovering on his claim for reimbursement were reasonably good; and (4) petitioner was not capable of determining his loss with reasonable certainty until the Commission issued its final decision with respect to petitioner's claim in 1965. The facts of the case do not support petitioner's argument with respect to the year in which the expropriation occurred. In support of his claim that the expropriation 13 did not occur before 1961, petitioner stated that until 1961 he always assumed that he owned an interest in the property and had never lost it. On the basis of the 1947 certification by a court in Lodz, he believed until 1961 that he had record title to an interest in the property and thus he assumed he owned the property and had never lost it. However, it is clear that petitioner's assumptions and beliefs as to continued ownership, without loss for tax purposes, are not decisive. Boehm v. Commissioner, supra at 292-293. Boehm rejects the use of the subjective factor *44 of the petitioner's reasonable and honest beliefs as "the controlling or sole criterion" in determining the year of loss. There, the Court stated (at 292): * * * a determination of whether a loss was in fact sustained in a particular year cannot fairly be made by confining the trier of facts to an examination of the taxpayer's beliefs and actions. Such an issue of necessity requires a practical approach, all pertinent facts and circumstances being open to inspection and consideration * * *. Petitioner's argument further assumes that an expropriation loss does not occur until the rightful owner has been deprived of legal title to the property. It is clear, however, from the case law that one may be deprived of "ownership" for purposes of section 165 and yet retain legal title. It is the loss of control over and possession of the property which constitutes the expropriation loss for income tax purposes. 14 United States v. S. S. White Dental Mfg. Co., supra at 402; Rozenfeld v. Commissioner, 181 F.2d 388, 390 (C.A. 2, 1950), affirming a Memorandum Opinion of this Court; and Wyman v. United States, 166 F. Supp. 766, 770 (Ct. Cl. 1958). In its reading of S. S. White Dental Mfg. Co. *45 the Court in Rozenfeld stated (at 390): [The] test is a practical one, and does not depend upon an absolute forfeiture of all legal right * * *. The relevant consideration * * * is not the legal consequences of the seizure, but how completely the owner is dispossessed: i.e., the remoteness of any recovery of the property or its proceeds. Neither does the fact that the property was never formally nationalized by the Polish government aid petitioner's case. Formal nationalization is not controlling as a decree may be a mere formality to the actual taking. Harry J. Colish, 48 T.C. 711, 716 (1967). In resolving questions of fact, this Court is entitled to draw whatever inferences and conclusions it deems reasonable from the established facts. Boehm v. Commissioner, supra at 293. After considering the evidence presented as to the use, control and possession of the property by petitioner, we have concluded that petitioner has not presented sufficient evidence to overcome respondent's determination that the expropriation occurred not later than 1951. Petitioner's assumption as to continued ownership and reliance upon his rightful legal title 15 do not outweight his deprivation of the *46 normal attributes of ownership such as receipt of income and control over the operation or use of the property. Petitioner maintained no physical control over or possession of his interest in the Korn real property. In fact, the caretaker whom petitioner's family left in charge of the property in 1940 was being paid by the city of Lodz in 1947. After World War II the building on the property was improved, but this was not done at petitioners' direction or expense. Petitioner received no income from the property's usage and he did not even know who was receiving the income. Petitioner has presented no evidence to show that he could have disposed of his interest in the property or that he sought to determine the actual status of the property. [11] After 1951 petitioner's contact with the building consisted only of yearly letters from the caretaker informing petitioner that the property was still in good physical condition. Accordingly, we have determined that petitioner was deprived of the relevant incidents of ownership in his one-twelfth interest in the Korn real property not later than 1951. [12] *48 *49 Actually, as will become apparent, it is not necessary to determine *47 the exact year of loss as the result in the 17 instant case is the same as long as the loss was actually sustained prior to 1960. In addition to establishing the time of the expropriation loss, the petitioner must also establish that he had a reasonable prospect of recovery of all or part of the value of his interest in the property in every year from 1951 until 1965, the year the loss deduction was claimed. Whether a reasonable prospect of recovery exists with respect to a claim for reimbursement is a question of fact and the burden of proving that fact is on the petitioner. Estate of of Fuchs v. Commissioner, 413 F.2d 503, 507 (C.A. 2, 1969), affirming a Memorandum Opinion of this Court. In order to postpone the time of the deduction of a loss, petitioner must have had an existing right to reimbursement at the time of the loss as well as the reasonable prospect of *50 being in fact reimbursed. Section 1.165-1(d) (2) (i), Income Tax Regs.; and Harry J. Colish, supra at 717. In this regard, petitioner stated that he and his family believed that, upon improvement of the political situation between the eastern European countries and the United States, ultimately it would be possible to reassert or derive some economic benefit from the property. During the years 1951 through 1960, petitioner and his family made no effort to contact the Polish authorities to determine the status of the property. Furthermore, petitioner has presented no proof that the Polish government ever intended or was likely to compensate him for the loss. 18 The tax law does not require that petitioner be an "incorrigible optimist" about the possibility of some eventual recoupment before a loss is deductible. United States v. S. S. White Dental Mfg. Co., supra at 403; Estate of Fuchs v. Commissioner, supra at 508. In fact, petitioner's hope or expectancy of future rights, in the absence of an existing right, is immaterial. Harry J. Colish, supra at 717. Petitioner here makes no showing of greater grounds for optimism at the time of the loss of his interest than those of the unsuccessful *51 taxpayers in Estate of Fuchs or Harry J. Colish. In the present case, despite past actions of the United States, the execution of the International Claims Settlement Act of 1949, and his expectancy that he would eventually derive some benefit from the property, petitioner had no existing right to reimbursement or reasonable prospect of recovery within the meaning of section 165 until 1960 when the Polish Claims Agreement was executed. The fact that petitioner did finally receive an award and compensation for his interest in the expropriated property does not establish that he had a reasonable prospect of being reimbursed in each of the years 1951 through 1960. Estate of Fuchs v. Commissioner, supra at 508. Consequently, we have concluded that from 1951 until 1960 petitioner had no reasonable prospect of recovery. 19 It follows that petitioner is not entitled to a section 165 loss deduction for the taxable year 1965 and is accordingly not entitled to a loss carryover under section 172 for the taxable years 1966, 1967 and 1968. Decision will be entered for the respondent. Footnotes
1. All Code references herein are to the Internal Revenue Code of 1954, as amended and as applicable to the taxable year involved, unless otherwise indicated. ↩
2. The material facts in the instant case are substantially the same as those in Richard Robinson, T.C. Memo. 1972-156↩, which involved petitioner's sister and the same piece of property, and in which petitioner was the counsel of record. Certain of the findings of fact in that case, as far as adopted in the stipulation of facts in the instant case, are found to be the facts in the instant case. 3. No evidence other than petitioner's statement was presented in the instant case to show that any effort was made by petitioner or his family from 1946 to 1951, or to 1960 for that matter, to establish through legal channels, i.e. the municipality or the courts (except for the court certification in 1947 as to the record holders of legal title), the actual status of the Korn real property. We note here that in Richard Robinson, see fn. 2 supra, the Court found as a fact that petitioner's family diligently petitioned the municipal and judicial authorities in Lodz between 1946 and 1951 to determine the status of the property but their efforts were futile as no response was received. We do not know why the evidence supporting this finding was not presented in this case. We can only assume that petitioner thought such evidence of the futility of these inquiries would be damaging to his case, as indeed the Court in Richard Robinson so found. 4. We are unable to ascertain exactly how the Korn family lost title to one-half interest in the Korn real property. The parties herein stipulated that the Korn family purchased the entire real property, but the court certification of January 18, 1947 indicated that the Korn family owned only a one-half interest as of that date. ↩
5. Article 34 of the Polish Law of March 8, 1946, provides in pertinent part as follows: (1) The Treasury and local Government associations will obtain by limitation (rendering obsolete) the title of ownership of abandoned property: - (a) as to immovable property at the end of 10 years; * * * ↩
6. The loss was computed by petitioner as follows: ↩ COMPUTATION OF FOREIGN EXPROPRIATION NET OPERATING LOSS
117,000.00
Value of property on Jan. 1, 1956 pursuant to valuation of Foreign Claims Settlement Commiss.
70,200.00
Loss of rents and income from Jan. 1, 1956 to Dec. 31, 1965; 6% per annum of value on Jan. 1, 1956 to Dec. 31, 1965.
$187,200.00
32,275.80
depreciation Bldg. constructed 1914; useful life of 100 years. Depreciation between Jan. 1, 1956 and Dec. 31, 1965 equals 17.2% of remaining useful life (58 years) on simple straight line depreciation under Reg. 1.167(b)-1.
154,925.20
Divided by 6 equals interest of taxpayer, or 25,820.86
25,820.86
Net operating loss of taxpayer under IRC 172(b).
7. On examination of petitioner's returns for these years, we note that the carryover for the last two years was miscalculated.Because of an amended return for 1966, which included $197.89 more income, and because of the erroneous inclusion of petitioner's $600 personal exemption in the loss carryover from the 1966 return, the carryover deductions for 1967 and 1968 should have been $16,483.08 and $10,006.89, respectively.
8. Respondent did not disallow the loss deduction when first claimed on the 1965 return. We can only assume that the reason for this was that the three year period of limitations of sec. 6501(a) had passed for the taxable year 1965 when respondent decided to disallow the deductions. ↩
9. SEC. 172(b) (1) (D) provides: (D) In the case of a taxpayer which has a foreign expropriation loss (as defined in subsection (k)) for any taxable year ending after December 31, 1958, the portion of the net operating loss for such year attributable to such foreign expropriation loss shall not be a net operating loss carryback to any taxable year preceding the taxable year of such loss and shall be a net operating loss carryover to each of the 10 taxable years following the taxable year of such loss (or, with respect to that portion of the net operating loss for such year attributable to a Cuban expropriation loss, to each of the 15 taxable years following the taxable year of such loss); * * * ↩
10. While the taxable year 1965 is not before us, presumably because it was closed by the three-year period of limitations of sec. 6501(a), we note initially that for the purposes of determining the correct tax liability in open years we are not barred from considering whether the expropriation claimed by petitioners to have occurred in 1965 actually occurred in that year. Sec. 6214(b); Phoenix Coal Co., Inc. v. Commissioner, 231 F.2d 420, 421 (C.A. 2, 1956), affirming a Memorandum Opinion of this Court; and Lord Forres, 25 B.T.A. 154, 158↩ (1932). 11. See fn. 3 supra. ↩
12. Since the loss itself was sustained not later than 1951, sec. 165 and the regulations promulgated thereunder are not applicable to this determination as chapter 1 of the 1954 Code applies only to taxable years commencing after December 31, 1953. Secs. 7851(a) (1) (A) and 7807(a), I.R.C. 1954. Thus, the determination of the year of loss is governed by sec. 23(e) of the 1939 Code which is substantially similar to sec. 165 of the 1954 Code in its interpretation by the courts and the regulations. Sec. 29.23(e)-1 of Regs. 111, promulgated under the 1939 Code, provided, in pertinent part, as follows: In general losses for which an amount may be deducted from gross income must be evidenced by closed and completed transactions, fixed by identifiable events, bona fide and actually sustained during the taxable period for which allowed. Substance and not mere form will govern in determining deductible losses. * * * We note here that sec. 4(h) of the International Claims Settlement Act provides that all actions of the Foreign Claims Settlement Commission shall be final and conclusive on all questions of law and fact and not subject to judicial or administrative review. With regard to the petitioner in the instant case, the Commission found as a fact that petitioner and his family abandoned the Korn real property within the meaning of Polish Law, Article 34 of the Law of March 8, 1946, and that the Korn real property was "taken" by the Polish government on January 1, 1956. Since this position was never maintained by the petitioner before the Commission, it appears that these findings were made solely to enable the Commission to rule favorably on petitioner's claim. We believe that these findings should be conclusive only with respect to any judicial or administrative review of the correctness of the determination by the Commission in its allowance or disallowance of a claim by an owner of an expropriation loss. A reading of the following pertinent part of sec. 4(h) of the International Claims Settlement Act supports this interpretation: The action of the Commission in allowing or denying any claim under this title shall be final and conclusive * * *. [emphasis supplied] Nevertheless, this issue is moot since the ultimate result will be the same regardless of whether the expropriation loss occurred not later than 1951 or in 1956 since there was no reasonable prospect of recovery until 1960. Furthermore, while petitioner brought this point of finality of the Commission's findings up on brief, he himself was apparently not convinced of the argument as he chose to agree with those findings of the Commission which were favorable to him but to disagree with those which were not.