**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-51

UNITED STATES TAX COURT

MICHAEL J. RUBLOWSKY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16498-11S.                    Filed June 9, 2014.

Michael J. Rublowsky, pro se.

<u>Eliezer Klein</u>, for respondent.

SUMMARY OPINION

GALE, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code of 1986, as in effect for the year in issue, and all Rule references
are to the Tax Court Rules of Practice and Procedure.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent.

Respondent determined a deficiency of $9,738[2] and a penalty under section 6662(a) of $1,948 with respect to petitioner's 2009 Federal income tax. After concessions,[3] the issues for decision are whether petitioner:

---

[2]All dollar amounts are rounded to the nearest dollar.

[3]Petitioner concedes that he failed to report $20 of taxable interest for 2009.
    The stipulation of facts states: "Petitioner concedes that he received $57,887 of taxable IRA distributions in 2009." In the notice of deficiency, however, respondent determined that petitioner had gross retirement income of $58,813, consisting of the $57,887 in individual retirement account (IRA) distributions petitioner reported and a $926 distribution from a Roth IRA (as indicated by the "J" distribution code on a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for 2009 received by respondent) that petitioner did not report. The notice of deficiency further determined that the taxable portion of the gross retirement distribution is $55,038. We are unable to readily reconcile the notice of deficiency's determination of the taxable portion of petitioner's IRA distribution with the parties' apparent position in the stipulation that the taxable portion is $57,887. We expect the parties to address this possible discrepancy in their Rule 155 computations.
    Also, in his pretrial memorandum petitioner claimed entitlement to deductions for a tax return preparation fee and other taxes, but at trial he did not address these items or offer any evidence with respect to them. We therefore treat these claims as abandoned.

(1) is entitled to deduct a casualty loss of $35,000.  We hold that he is not;

(2) is entitled to deduct certain mortgage interest and real property taxes as expenditures arising from a personal residence or as trade or business expenses arising from rental real estate.  We hold that petitioner is entitled to deduct the expenditures only as trade or business expenses from rental real estate;

(3) is entitled to deduct certain mortgage insurance payments.  We hold that he is not; and

(4) is liable for an accuracy-related penalty under section 6662(a).  We hold that he is not.

## Background

Some facts have been stipulated and are incorporated herein by this reference.  At the time the petition was filed, petitioner resided in New York.  Petitioner graduated from law school in 2006 and thereafter passed the New York bar examination and held a legal services job for a time.  On January 28, 2010, the Social Security Administration (SSA) determined that he was disabled and entitled to disability benefits as of June 1, 2008.  The SSA found that petitioner had, as of that date, severe physical and mental impairments that limited his functional capacity.

On February 28, 2007, a fire caused damage to a dwelling on a parcel of real property that petitioner owned in Far Rockaway, New York (Far Rockaway property). The New York City Fire Department prepared an incident report regarding the fire. The incident report states that the dwelling was "occupied", that the fire was confined to the bedroom where it originated, and that the heat source was a cigarette. The report further states: "Occupant Safraz Rustam received minor burns to his left hand asn [sic] was treated at the scene by EMS".

Shortly after the fire occurred, petitioner filed an insurance claim under a homeowners property casualty insurance policy (policy) that he had purchased from State Farm Fire & Casualty Co. (State Farm). The parties do not dispute that the policy provided casualty coverage only for a dwelling used by petitioner as his residence. The record does not disclose the precise time at which State Farm raised concerns about the validity of petitioner's claim; but over an approximately 22-month period after he submitted the claim, State Farm sought to obtain from petitioner documents and a sworn statement to substantiate that he was using the Far Rockaway property as his residence at the time of the loss. State Farm ultimately concluded that petitioner had failed to provide the required documents and sworn statement and had materially misrepresented the facts concerning the loss. Reciting the foregoing, in a December 11, 2008, letter to petitioner State

Farm declined to provide coverage for the loss. With respect to the sworn statement, the letter stated: "[Y]ou have not returned the signed copy of the examination under oath transcript".

Petitioner wrote State Farm in January, February, March, April, and June 2009, disputing the denial of coverage. Although he insisted in one of these letters that he had submitted to a sworn examination, he ignored State Farm's contention that he had failed to return a signed copy of the examination transcript. There is no evidence that State Farm responded to any of petitioner's followup letters or made any payment with respect to the fire damage.

On his Federal income tax return for 2008 (which has no entry indicating a return preparer) petitioner deducted $17,500 in mortgage interest attributable to the Far Rockaway property in part I of Schedule E, Supplemental Income and Loss, which covers "Income or Loss From Rental Real Estate and Royalties". Also in that part, he reported rents received of $24,500.[4]

On his 2009 return petitioner reported IRA distributions of $57,887 but classified them as nontaxable. He did not claim a casualty loss deduction or any other deductions with respect to the Far Rockaway property.

---

[4]Petitioner's Federal income tax return for 2007 is not in the record.

In April 2011 respondent mailed petitioner a statutory notice of deficiency for his 2009 taxable year. The notice determined that petitioner incorrectly excluded from his taxable income $55,038 of retirement income (attributable to various IRA distributions).[5] In response, petitioner submitted an amended return for 2009 on which he reported $57,887 in IRA distributions as taxable and for the first time claimed a casualty loss deduction of $35,000 arising from a "fire in 2007", as well as deductions for home mortgage interest of $16,138, real estate taxes of $751, and mortgage insurance premiums of $1,600.[6] The casualty loss was claimed in part B of Form 4684, Casualties and Thefts, of the amended return--that is, as attributable to business or income-producing property--and deducted in arriving at adjusted gross income. The mortgage interest, real estate taxes, and mortgage insurance premium amounts were deducted on Schedule A, Itemized Deductions, of the amended return, with the mortgage interest amounts characterized as "home" mortgage interest.

---

[5]The notice also disallowed a $33 earned income credit as a computational adjustment.

[6]The parties have stipulated that the mortgage interest and real estate taxes noted above were paid by petitioner in 2009 with respect to the Far Rockaway property. There is also no dispute that the casualty loss petitioner claimed on his 2009 amended return was premised on the 2007 fire damage to the Far Rockaway property.

Petitioner timely filed a petition with the Court seeking a redetermination of the deficiency.

Discussion

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that the determinations are erroneous. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and the burden of showing entitlement to a claimed deduction is on the taxpayer.[7] Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

Casualty Loss

Respondent argues that petitioner is not entitled to a casualty loss deduction for 2009 for damages to the Far Rockaway property caused by the fire in 2007. We agree.

Section 165(a) allows taxpayers to deduct any losses sustained during the taxable year that are not compensated for by insurance or otherwise. For individuals, deductible losses are limited to losses incurred in a trade or business or in any transaction entered into for profit, or, in the case of losses of property not

_____

[7]Petitioner has not claimed or shown entitlement to any shift in the burden of proof pursuant to sec. 7491(a).

connected with a trade or business or a transaction entered into for profit, losses that arose from casualty or theft. Sec. 165(c).

In general, a loss is allowed as a deduction only for the taxable year in which the loss is sustained. Sec. 165(a); sec. 1.165-1(d)(1), Income Tax Regs. For this purpose, a loss is treated as sustained when it is evidenced by closed and completed transactions and fixed by identifiable events. Sec. 1.165-1(d)(1), Income Tax Regs. However if, in the year of a casualty which may result in a loss, there is a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is treated as sustained until it can be ascertained with reasonable certainty whether such reimbursement will be received. Sec. 1.165-1(d)(2)(i), Income Tax Regs.

The casualty giving rise to the loss at issue occurred in 2007. Thus, the loss is treated as sustained in that year unless petitioner had a claim for reimbursement with respect to which there was a reasonable prospect of recovery as of the close of 2007. Petitioner had taken out the policy with respect to the Far Rockaway property, so the question becomes whether he had a reasonable prospect of recovery on a claim for reimbursement under that policy.

Whether a taxpayer has a reasonable prospect of recovery on an insurance claim is a question of fact, determined by examining all the facts and circumstances of the case. Id. The test is an objective one; the taxpayer's subjective belief concerning recovery is not controlling. Instead, the expectation of recovery must be reasonable in the light of objective facts and circumstances bearing on it at the close of the taxable year. See Boehm v. Commissioner, 326 U.S. 287, 292-293 (1945); Estate of Fuchs v. Commissioner, 413 F.2d 503, 507-508 (2d Cir. 1969), aff'g T.C. Memo. 1968-188; Ramsay Scarlett & Co. v. Commissioner, 61 T.C. 795, 812-813 (1974), aff'd, 521 F.2d 786 (4th Cir. 1975). A reasonable prospect of recovery exists when the insurance claim is bona fide and has a substantial likelihood of being decided in the taxpayer's favor. See Ramsay Scarlett & Co. v. Commissioner, 61 T.C. at 811 (citing Scofield's Estate v. Commissioner, 266 F.2d 154, 159 (6th Cir. 1959), aff'g in part, rev'g in part 25 T.C. 774 (1956)). Claims for recovery with a remote or nebulous potential for success are insufficient grounds for postponing a deduction from the year in which the loss occurs. See id. (citing United States v. S.S. White Dental Mfg. Co., 274 U.S. 398, 403 (1927)). Where the circumstances show that the claim is based on an insurance policy that does not cover the casualty, there is no reasonable prospect of recovery sufficient to postpone recognition of the loss to a year after

the year in which it occurs. <u>Coastal Terminals, Inc. v. Commissioner</u>, 25 T.C. 1053, 1057 (1956).

Petitioner does not dispute that the policy required that he use the dwelling as his residence. Instead, petitioner contends that he was using the property as his residence at the time of the fire, notwithstanding State Farm's position to the contrary. As discussed below, we conclude on the basis of the preponderance of the evidence that petitioner was <u>not</u> using the Far Rockaway property as his residence when the fire occurred.

The fire department's incident report states that an "occupant" of the Far Rockaway property, Safraz Rustam, suffered burns and was treated on the scene. Confronted with this potential inconsistency with his claim of residing there, petitioner testified vaguely to the effect that he was in Florida at the time of the fire and that he allowed his sister, and any other persons she chose, to live there. But he was at best vague with respect to his familiarity with Safraz Rustam. Petitioner could have called his sister as a witness to corroborate the foregoing (or explained her unavailability), but he did not. In these circumstances, respondent is entitled to an inference that her testimony would have been unfavorable to petitioner's contentions. See <u>Wichita Terminal Elevator Co. v. Commissioner</u>, 6 T.C. 1158, 1165 (1946), <u>aff'd</u>, 162 F.2d 513 (10th Cir. 1947). This conclusion is

reinforced by the fact that the incident report was a stipulated exhibit in the case, one with which petitioner was familiar. His apparent dissembling regarding the identity of Safraz Rustam significantly undermines his credibility.

In its letter denying coverage, State Farm cited petitioner's failure to provide a signed copy of his examination transcript as a reason for denying coverage. Petitioner did not take specific issue with State Farm's assertion at the time. At trial he testified that he did not recall whether he had provided a signed copy. Petitioner's evasiveness regarding signing a sworn statement concerning his use of the Far Rockaway property as his residence is at odds with his contention in this proceeding that he was doing so at the time of the fire.

Finally, petitioner took a position on his 2009 amended return that is inconsistent with his contention that he was using the Far Rockaway property as his residence in 2007. The amended return claimed the casualty loss arising from the 2007 fire at the Far Rockaway property as a loss attributable to business or income-producing property.[8] In addition, on his 2008 return, petitioner treated the Far Rockaway property as a rental property, deducting the mortgage interest paid

_____

[8]The Form 4684 on which petitioner claimed the loss had a separate part for casualty losses from personal use property (described thereon as "property not used in a trade or business or for income-producing purposes").

with respect to it on a Schedule E as an expense of a rental property and reporting rental income of $24,500 in that year.[9] While it is possible that petitioner in fact used the Far Rockaway property as his residence in early 2007 and then commenced renting it sometime thereafter, he made no attempt to reconcile his claimed personal use in 2007 with his acknowledged rental use in 2008.

Given the objective evidence that the Far Rockaway property was being used as a rental property at the time of the fire in 2007, and petitioner's vague, inconsistent, and implausible testimony to the contrary, we find on this record that petitioner was not using the Far Rockaway property as his residence at the time of the fire in 2007. Consequently, the policy did not cover the loss attributable to the fire. Thus, as a matter of objective fact, notwithstanding any subjective belief petitioner held, there was no reasonable prospect of recovery on any claim for reimbursement from State Farm as of the close of the 2007 taxable year. Any casualty loss arising from the fire is treated as sustained and deductible in 2007, not 2009. See Coastal Terminals, Inc. v. Commissioner, 25 T.C. at 1057 (no reasonable prospect of recovery postponing casualty loss deduction where

_____

[9]Confronted with a transcript of his 2008 return at trial, petitioner testified that the reporting of the $24,500 as rental income was a "mistake" because the Far Rockaway property was fire-damaged at the time, but he offered no further explanation as to the possible source of $24,500 in rental income for that year.

taxpayer's engineers concluded, before close of the year of loss, that property damage was attributable to cause not covered by insurance policy).

Mortgage Interest and Real Estate Taxes

Petitioner claims entitlement to deduct $16,138 in mortgage interest and $753 in real estate taxes paid with respect to the Far Rockaway property in 2009 and not claimed on his original 2009 return as filed. Respondent concedes that petitioner paid these amounts in 2009 with respect to the Far Rockaway property but takes issue with petitioner's contention that he is entitled to deduct these amounts on Schedule A as itemized deductions, arguing instead that petitioner is entitled to the deductions only as trade or business expenses.[10] We agree with respondent.

Petitioner reported the Far Rockaway property as rental property on his 2008 return and has offered no testimony or other evidence to support a finding that the use of the property changed between 2008 and 2009. Moreover, petitioner, an individual, has not shown that the mortgage interest he paid is not "personal interest" disallowed pursuant to section 163(h)--except to the extent

---

[10]Respondent does not contend that these deductions are subject to disallowance under sec. 469 because the expenditures were incurred in connection with rental real estate activities.

respondent has conceded that the interest was paid on indebtedness properly allocable to the trade or business of property rental.

Because we find on this record that the Far Rockaway property was a rental property in 2009, we hold that petitioner is entitled to deduct $16,138 in mortgage interest and $753 in real estate taxes as trade or business expenses under section 162.

Mortgage Insurance

Petitioner also claims entitlement to deduct $1,600 in mortgage insurance premiums paid with respect to the Far Rockaway property in 2009 that was not claimed on his original 2009 return.  As petitioner offered no document or other convincing evidence that would substantiate his payment of any amount for mortgage insurance in 2009, we hold that he is not entitled to the deduction claimed.

Accuracy-Related Penalty

Respondent determined that petitioner is liable for an accuracy-related penalty with respect to the underpayment reflected on his 2009 return.  After the parties' various concessions, there remains an underpayment attributable to

petitioner's failure to report $57,887[11] in IRA distributions as taxable and his failure to report $20 of taxable interest.  (Petitioner has conceded that he received the latter.)  Petitioner contends that he had reasonable cause for his reporting of the IRA distributions as nontaxable, given the cognitive impairments he was suffering at the time he prepared his 2009 return, as evidenced by the SSA determination that he was disabled.  We agree.

Section 6662(a) and (b)(1) and (2) imposes a penalty equal to 20% of an underpayment of tax required to be shown on a return that is attributable to a substantial understatement of income tax or negligence.  However, no penalty is imposed with respect to any portion of an underpayment if the taxpayer acted with reasonable cause and in good faith with respect to that portion.  Sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs.  The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Generally, the most important factor is the taxpayer's effort to assess his or her proper tax liability.  Id.  The taxpayer's cognitive impairment or emotional distress may constitute reasonable cause for underpayments arising from mistakes or omissions on a tax return.  See Ruckman v. Commissioner, T.C.

---

[11]The figure may instead be $55,038.  See supra note 3.

Memo. 1998-83; <u>Carnahan v. Commissioner</u>, T.C. Memo. 1994-163, <u>aff'd without published opinion</u>, 70 F.3d 637 (D.C. Cir. 1995).

Petitioner testified that, when preparing his 2009 return, he was confused regarding whether his disabled status exempted him from income tax on his IRA distributions or merely from the penalty on early distributions. In this confusion, he reported the distributions on his return but categorized them as nontaxable.

On January 28, 2010, less than three months before petitioner filed his 2009 return, the SSA had issued a determination that petitioner was entitled to disability benefits. The determination was based on findings, inter alia, that petitioner had the following "severe" impairments: "dysthymic disorder [depression]; anxiety related disorder; and ADHD [attention deficit hyperactivity disorder]." The determination found that the "claimant [petitioner] has the residual capacity to perform light work * * * <u>except for</u> the limited ability to use judgment and public transportation unaccompanied" and concluded that petitioner was limited to "simple, nonpublic, unskilled work". (Emphasis added.) The determination further found that petitioner's condition would prevent him from performing legal services work, which he had performed before the onset of his disability.

The SSA disability determination is the most reliable evidence in the record of petitioner's condition at the time he filed his 2009 return. In view of

petitioner's demonstrated cognitive impairment at the time,[12] we are satisfied that his error in reporting the IRA distributions as nontaxable is due to reasonable cause and his disclosure of the distributions on the return is evidence of good faith. We therefore hold that petitioner had reasonable cause for the portion of the underpayment attributable to his failure to report the IRA distributions as taxable.

That leaves only a de minimis portion of the underpayment attributable to petitioner's failure to report $20 of taxable interest. That amount is too small to give rise to a substantial understatement, nor does the omission establish negligence, given its isolated nature and petitioner's cognitive impairment at the time.

We therefore hold that petitioner is not liable for any penalty under section 6662.

To reflect the foregoing,

Decision will be entered under Rule 155.

---

[12]While the SSA determination demonstrates petitioner's cognitive impairment at the time he filed his return, we are satisfied on the basis of our observation of him at trial that he was competent to litigate this case.