## MILLER v. MISSISSIPPI & S. V. R. CO.
## OAKLEY v. SAME.
### Nos. 11002, 11003.

Circuit Court of Appeals, Fifth Circuit.
Jan. 18, 1945.

Phil Stone, of Oxford, Miss., and Walter P. Armstrong, of Memphis, Tenn., for appellants.

W. I. Stone, of Coffeeville, Miss., and Edward P. Russell, of Memphis, Tenn., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

Appellants R. Miller and J. L. Oakley by separate petitions sued Mississippi and Skuna Valley Railroad Company for pay for work done as locomotive engineers in excess of eight hours per day, relying on the provisions of the so-called Adamson Eight Hour Act, 39 Stat. 721, 45 U.S.C.A. § 65. The defendant pleaded that it was excepted, as an independently owned railroad less than 100 miles long, from the provisions of the Act, and that the plaintiffs had express-ly agreed to work for the hours they worked and for the wages already paid them. The facts were developed without contradiction by interrogatories propounded by the plaintiffs to the defendant's general manager and its superintendent, and by their depositions. On these facts the plaintiffs moved for summary judgment and the defendant for a dismissal. The judge denied the former motion and granted the latter. These appeals followed.

It is not denied that this railroad company is engaged in interstate commerce and is subject to the Adamson Act unless excepted. The plaintiffs-appellants contend that the effect of the provision of Section 1 of the Act, 45 U.S.C.A. § 65, "Eight hours shall, in contracts for labor and service, be deemed a day's work and the measure or standard of a day's work for the purpose of reckoning the compensation for services of all employees," is to cause every contract for a daily wage to mean, as a matter of law, that the agreed wage is for eight hours work, and if more hours are worked more pay is due at the same rate per hour. The evidence in the present cases is that each plaintiff was employed orally to make a round trip of about sixty miles each day, with necessary switching and placing of cars, for $5.40 per day, no matter how many hours it took. They were thus paid over a series of years. The work generally took more than eight hours, and more often than not twelve hours per day. The hours worked each day were shown. On this point the defendant-appellee contends that the Adamson Act, as interpreted in Wilson v. New, 243 U.S. 332, 37 S.Ct. 298, 61 L.Ed 755, L.R.A.1917E, 938, Ann.Cas.1918A, 1024, fixed wages as asserted by the plaintiffs only for the test period of six months, as provided plainly in Section 3, 39 Stat. 722, but after that left employer and employee entirely free to fix the rate of pay for all service, whether for eight hours or in excess thereof, as they might agree, even though nothing is agreed to be paid for the excess. In Plummer v. Pennsylvania R. R. Co., 7 Cir., 37 F.2d 874, this view seems to have been sustained. No other case appears to have been decided, though the Adamson Act has been in effect for thirty-eight years. We express no opinion on the point, because we think this railroad is excepted from the Act.

The exception reads: "Except railroads independently owned and operated not exceeding one hundred miles in length, electric street railroads, and electric interurban rail-

552

roads * * * : Provided, That the above exceptions shall not apply to railroads though less than 100 miles in length whose principal business is leasing or furnishing terminal or transfer facilities to other railroads, or are themselves engaged in transfers of freight between railroads, or between railroads and industrial plants." This railroad is 29.24 miles long, extending wholly in Mississippi from a station on the Illinois Central Railroad along the Skuna River valley to Bruce, a town of 1200 to 1400 inhabitants. At Bruce it has a depot and side tracks, and an agent who issues bills of lading for outbound freight, both carload and less than carload, and whether local or to pass over other railroads. He delivers incoming freight, and collects the charges, which on joint hauls are accounted for to connecting railroads in the usual manner. There are several flag stations along the line, serving more or less populous communities, at which there is no agent. The railroad carries freight and passengers, mail and express. It has its own tracks and right of way, its own engine, passenger cars, and some other rolling stock, but it uses the box-cars of other railroads on the usual rental basis. Its capital stock is owned by numerous individuals, and none of it by any other railroad or industrial plant. It has its full corporate organization, files its local tariffs with the State railroad commission and its interstate joint-rates with the Interstate Commerce Commission. It has the usual interchange track at the junction to receive cars from the Illinois Central Railroad, or deliver them to it, but its operations are otherwise separate and independent. This is plainly a railroad less than 100 miles long, independently owned and operated, within the general exception.

The real question is whether it is taken out of the exception by the proviso, as a railroad "engaged in transfers of freight between railroads, or between railroads and industrial plants." For there are ten industrial plants served by this railroad, including two lumber mills, two cotton gins, two petroleum products plants, two storage warehouses, and two processing plants for dairy products. The traffic to and from these plants constitutes roughly three-fourths of the freight handled, and practically all of it goes to or from the Illinois Central Railroad, so that in the broadest sense this railroad is engaged in transfers of freight between another railroad and industrial plants. But we are persuaded that the words of the proviso were not intended in so broad a sense, because so to interpret it would result in its destroying the exception in the Act instead of merely limiting it. Congress intended to except from the operation of the Act short line independent railroads, but few can be found which do not carry freight from some railroad to another, or to and from some industrial plant. A reading of the whole proviso makes it plain that terminal companies and city belt lines, which do not act as ordinary railroad carriers, but are really agencies and instrumentalities of the greater railroads which use them, were in mind. Such companies, though they operate railroad engines and tracks, do not issue bills of lading, collect freight from consignees, or deal directly with the public. They are substantially a part of the railroads which they serve. The word "transfer," which is twice used in the proviso, is not used as the equivalent of carriage, or transportation, but with a special meaning common in railroad speech to signify a moving of freight for some railroad purpose other than its line transportation. Thus a "transfer track" is not one used for transportation, but where railroads deal with one another. The "transfer platform" is one where freight is put from one car into another. A "transfer company" designates one which moves passengers or freight from one railway station to another. "Transfer facilities" in the proviso is used in connection with "terminal facilites," and evidently not meaning main line transportation facilities. So "transfers of freight between railroads" does not mean the usual transportation of freight by a short line carrier on its own tariffs, from a connecting railroad carrier at one end of its line to another at the other end. Equally a "transfer of freight between a railroad and an industrial plant" does not mean transportation on a bill of lading issued by a shortline railroad on its own tariffs from an industrial plant to a connecting carrier at the end of its own line, or vice versa. The appellee here did no "transfer" work, in this limited sense, for a "transfer charge". It operated its railroad for the common carriage of freight and passengers as other railroads are operated. It was and is within the exception and not within the proviso of the Adamson Act; and on the undisputed facts the court did not err in dismissing the suits.

The judgment in each case is affirmed.