FIRST NATIONAL BANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 44642.    Filed April 30, 1954.

*William W. Johnston, C. P. A.,* for the petitioner.
*James T. Lodge, Esq.,* for the respondent.

### OPINION.

MURDOCK, *Judge:* The Commissioner determined a deficiency of $502.96 in income tax of the petitioner for 1949. The only issue for decision is whether the petitioner is entitled to a recovery exclusion of $688.73 under section 22 (b) (12), Internal Revenue Code, resulting from a recovery on a debt previously charged off. The facts have been presented by a stipulation which is adopted as the findings of fact.

The petitioner filed its return for 1949 with the collector of internal revenue for the district of Vermont.

The petitioner reported a net loss of $6,023.35 on its corporation income and excess profits tax return for 1937. The Commissioner made no changes in the income, deductions, or tax for that year. The petitioner claimed deductions on that return of $58,933.17 for bad debts on various notes and bonds. It recovered $2,018.22 in 1949 on one of the amounts charged off in 1937 as a bad debt. It concedes in the stipulation that between 1937 and 1948 it made other recoveries in the total amount of $18,566.01 on the amounts charged off as bad debts in its 1937 return. Section 22 (b) (12) allows the exclusion from gross income and the exemption from taxation of income attributable to the recovery during the taxable year of a bad debt to the extent of the amount of the recovery exclusion with respect to such bad debt. A bad debt is defined thereunder as "a debt on account of worthlessness or partial worthlessness of which a deduction was allowed for a

prior taxable year." Recovery exclusion is defined in section 22 (b) (12) (D) as "the amount, determined in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, of the deductions * * * allowed, on account of such bad debt, * * * which did not result in a reduction of the taxpayer's tax under this chapter '* * * or corresponding provisions of prior revenue laws, reduced by the amount excludible in previous taxable years with respect to such debt, * * * under this paragraph." Regulations 111, section 29.22 (b) (12)–1 (b) (1) provides that for the year of any recovery the section 22 (b) (12) items which were deducted for a prior year are considered as a group so that all recoveries are applied against the total deduction claimed for the earlier year in computing the recovery exclusion.

Obviously, as the petitioner recognizes, the facts stated thus far would give the petitioner no recovery exclusion for 1949 because the recoveries in prior years on the 1937 bad debt charge-offs had exceeded the loss claimed on the return for 1937 so that the amount excludible in previous taxable years with respect to the 1937 bad debts had eliminated the amount thereof which did not result in the reduction of the taxpayer's tax for 1937.

The parties have stipulated that if the taxable income of the petitioner for 1937 might be recomputed "taking into account allowable items of exclusion and deduction which, however, were not excluded or deducted on its Corporation Income and Excess Profits Tax Return for 1937" a net loss for that year of $19,254.74 would result. The petitioner would then subtract from that loss the recovery exclusions for the years 1938 through 1948 of $18,566.01 to arrive at the difference of $688.73 which it claims as a recovery exclusion for 1949. Apparently, the deductions and exclusions to which the petitioner would have been entitled in 1937, had it made claim for them on its return for that year or within the time prescribed by law, involved other items and would not increase the total amount of bad debts actually charged off on that return.

The Commissioner's position is that while section 22 (b) (12) allows this petitioner to exclude from its taxable income in subsequent years, recoveries on the bad debts charged off in 1937 until the recoveries equal $6,023.35, the net loss reported for 1937, it does not "contemplate the reopening of a tax return filed [for 1937], and tacitly approved by the Commissioner." He argues that the computations required under section 22 (b) (12) are based upon the tax return filed or upon the final computation for the earlier year and nowhere in the statute, the regulations, or the legislative history of the provision is there an indication that it is to be based upon amounts which might have been, but were not, shown in the return or made a part of the final computation for that year.

There is not a great deal to indicate what Congress might have intended in a case like this but such indications as appear support the Commissioner. Certainly no change could be made in the bad debt deduction for 1937 because the statute refers to only those bad debts for "which a deduction * * * was allowed for a prior taxable year." It is difficult to believe that Congress meant to allow other deductions or exclusions not shown on the 1937 return when it limited the bad debt, prior tax, and the delinquency amount on which recoveries could be made to the amounts "allowed for a prior taxable year." Section 22 (b) (12) (D) defines the "recovery exclusion" as the amount of the deductions allowed for bad debts "which *did not result* in a reduction of the taxpayer's tax under this chapter." [Emphasis supplied.] Likewise, in the legislative history of the provision, the expression "did not in any prior taxable year reduce his income tax liability," or its equivalent, appears several times. These phrases using the words "did not," as contrasted with "would not have" or "could not have" indicate that Congress meant to accept the final results of the prior years and did not intend that changes, even corrections, could be made after those results had. become final. Corrections, if permissible, could work advantages for the Commissioner as well as for the taxpayer and might apply also to the intervening years during which recoveries were made on the bad debts charged off.

This Court, in discussing this same provision of the Code, said "We must take the facts as we find them, not as they might have been." *Corporation of America*, 4 T. C. 566, 572. The law requires new computations for the earlier years and the computations require the use of new facts not known during those years in cases like *Ayers J. Stockly*, 22 T. C. 28, involving section 107, but there are no new facts affecting the 1937 computation of the income and deductions of the present petitioner and section 22 (b) (12) requires no new computation for that year. The conclusion has been reached that the petitioner is bound by the return which it filed for 1937 and which was tacitly approved by the Commissioner and it may not now successfully maintain that the amount which "did not result in a reduction" of its income tax for 1937 was in excess of the net loss shown on the return merely because it might have shown for that year a larger amount which "would not have resulted in a reduction" of its income tax for that year.

An alternative contention of the Commissioner does not actually require decision but a brief discussion of it may serve to point up the difficulties of allowing corrections to be made after the statute of limitations has run as to a particular year. The 1937 bad debt deduction included $22,800 charged off on account of the partial worth-

lessness of Denver & Rio Grande bonds which the petitioner had purchased for $26,400. That charge-off left $3,600 as the basis for the bonds. They were sold in 1941 for $3,062.43. The petitioner on its 1941 return reported a loss of $23,337.57 from that sale by using its original basis of $26,400 instead of its correct remaining basis of $3,600. Its correct 1941 loss from the transaction was only $537.53. It made another error on that return and, as a result of the two errors, reported a net loss of $3,463.46, whereas it actually had net income of $29,596.92. The year 1941, like the year 1937, is now closed and no adjustments for those years can be made. The Commissioner contends, as an alternative, that the tax benefit, received by the petitioner as a result of its failure to use the correct basis on the Denver & Rio Grande bonds in its 1941 return, should be taken into account in computing the recovery exclusion with the result that the recoveries in prior years will have exhausted the portion of the 1937 bad debt deduction which did not reduce taxes for that year. The trouble with this argument is that there was no actual recovery in 1941 of any of the amount charged off in 1937 on the Denver & Rio Grande bonds but, on the contrary, those bonds were sold for less than the basis to which they were written down by the 1937 charge-off. The computation of an exclusion deduction for 1949 could not be used to correct the error made by the petitioner on its 1941 return which was not caught by the Commissioner within the statutory period of limitation on assessment and collection of the additional taxes which were due for 1941. A great many words would have to be read into section 22 (b) (12) in order to reach the result advocated by the Commissioner and, furthermore, there is no indication anywhere that Congress intended any such result. Congress did not intend that either the 1937 or the 1941 return of the petitioner could be amended in the way that the parties suggest.

Reviewed by the Court.

*Decision will be entered for the respondent.*