EMANUAL NADLER AND JANE NADLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nadler v. Commissioner
Docket No. 3857-86.
United States Tax Court
T.C. Memo 1988-234; 1988 Tax Ct. Memo LEXIS 262; 55 T.C.M. (CCH) 949; T.C.M. (RIA) 88234; May 26, 1988. Steven Kamerman, for the petitioners. John E. Becker, Jr., for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency of $ 93,960 in petitioners' 1981 Federal income tax. The sole issue for decision relates to the proper treatment of a payment of $ 170,510 from the Egyptian government in that year. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated by reference. Petitioners resided in New York, New York, at the time they *264 filed their petition. They filed a joint Federal income tax return for 1981 with the Internal Revenue Service Center, Holtsville, New York. Mr. Nadler was born in Egypt on September 13, 1934. He came to the United States as a student in 1951, and became a naturalized citizen on April 15, 1963. He has also retained his Egyptian citizenship. In 1941, Maurice Nadler, Mr. Nadler's father, died. Mr. Nadler inherited one-fourth of Maurice Nadler's estate, which included certain real and personal property held for personal use by Maurice Nadler and a one-third interest in the partnership of Nadler Brothers, a candy manufacturer located in Egypt. [1] Thus, Mr. Nadler inherited approximately 8 percent of Nadler Brothers from his father. In 1952, Solomon Nadler's one-third interest in Nadler Brothers was sold for EL [2] 230,000. At that time, Mr. Nadler purchased one-eleventh of Solomon Nadler's interest, or approximately an additional 3 percent of the company, for EL 20,900 ($ 58,520 [3]). See pages 10-11, infra. In 1958 or 1959, Sonja Nadler, who was Marco Nadler's sole *265 heir, sold her 44-percent interest in Nadler Brothers for EL 440,000. At that time, Mr. Nadler purchased an additional 13 percent of the company for EL 130,000 ($ 364,000). See page 11, infra. After this purchase, Mr. Nadler owned a total 24 percent of Nadler Brothers. [4]
On October 25, 1961, Gamal Abdul Nasser, the President of Egypt, issued Sequestration Order No. 138, under which all of Mr. Nadler's holdings in Egypt were sequestered. Under Egyptian law in effect at that time, sequestration prevented the owner of the sequestered *266 property from managing it or disposing of it himself. Legal title remained with him and did not pass to the Egyptian government. The government appointed a sequester agent to manage and dispose of the property for the owner. On August 8, 1963, President Nasser issued Nationalization Law No. 72. Among the properties nationalized under that law was Mr. Nadler's holding in Nadler Brothers. Under Egyptian law in effect at that time, legal title to the property passed from the owner to the Egyptian government by virtue of the nationalization law. The government was required to compensate the former owners of the property by issuing 15-year bonds bearing 4-percent interest. No such bonds have been issued with respect to Mr. Nadler's property. Between 1964 and 1967, Mr. Nadler,s through attorneys in both Egypt and the United States, made efforts to recover compensation for both his sequestered and the nationalized property in Egypt. During 1967, the Six Day War between Israel and Egypt occurred, and diplomatic relations between the United States and Egypt were broken off. Also in 1967, an Egyptian government official moved into one of the houses that had been in Maurice Nadler's *267 estate. On his Federal income tax return for 1967, Mr. Nadler claimed a deduction for an ordinary loss due to expropriation of $ 496,000. On February 28, 1974, diplomatic relations between the United States and Egypt were restored. On May 1, 1976, the governments of the United States and Egypt signed a treaty providing for compensation to nationals of the United States from the government of Egypt on account of sequestered or nationalized property. Mr. Nadler made a formal claim for such compensation. During 1981, the Egyptian government paid Mr. Nadler $ 170,510 on his claim. He did not report this amount on his 1981 Federal income tax return. OPINION The sole issue for decision is whether the 1981 payment is includable in petitioners' gross income. To the extent that this involves factual determinations, petitioners bear the burden of proof. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a).[5] We also note that difficulties encountered by petitioners, due to the lapse of time, in producing evidence to support their contentions do not lessen that burden. *268 Burnet v. Houston,283 U.S. 233 (1931). [6]
In general, a deduction is allowed for "any loss sustained *269 during the taxable year and not compensated for by insurance or otherwise." Section 165(a). The deduction for business losses is limited to the adjusted basis provided by section 1011. See section 165(b). Individuals may only deduct losses incurred in a trade or business, in transactions entered into for profit and in certain casualties. Section 165(c).[7] Under the tax benefit rule, if a loss is deducted and a recovery subsequently made, the amount recovered is includable in gross income to the extent that a tax benefit was received when it was deducted. Section 1.165-1 (d)(2)(iii), Income Tax Regs. See also Home Savings and Loan v. Commissioner,39 T.C. 368 (1962). If no deduction is claimed in the year the loss was sustained, a deduction for the loss may not be claimed in subsequent years, see Colish v. Commissioner,48 T.C. 711 (1967), but recoveries are not includable in gross income to the extent of pre-loss basis. Boehm v. Commissioner,146 F.2d 552, 555 (2d Cir. 1945), revg. on other grounds a Memorandum Opinion of this Court; cf. Farcasanu v. Commissioner,50 T.C. 881 (1968), *270 affd. 436 F.2d 146 (D.C. Cir. 1970). In 1967, Mr. Nadler deducted an expropriation loss under section 165. As a threshold matter, the proper treatment of his 1981 recovery requires us to determine: (1) whether the deduction represented the expropriation of Mr. Nadler's interest in properties in Egypt other than his 24-percent interest in Nadler Brothers, and (2) in the event that we hold that it represented his interest in Nadler Brothers, did the basis of that interest exceed the amount of the deduction, i.e., $ 496,000 and, if so, by how much. Our resolution of these issues will determine the extent to which we must deal with further issues in order to dispose of the question before us, namely, the taxability of the $ 170,510 payment received by Mr. Nadler from the Egyptian government in 1981. Petitioners first contend that the 1967 deduction was based on the expropriation of Mr. Nadler's *271 assets held for the personal use of the Nadler family in Egypt and that no deduction was claimed for loss of his interest in Nadler Brothers. They argue that, having deducted no loss on the expropriation of that interest, they need not include in gross income compensation for that loss until the full amount of Mr. Nadler's basis in the interest is recovered. Petitioners have introduced no evidence, other than Mr. Nadler's general testimony that the deduction did not relate to his interest in Nadler Brothers. Their 1967 tax return is unavailable, and the parties' stipulation merely states "On his tax return for the taxable year 1967, the petitioner claimed an ordinary loss, due to expropriation, in the amount of $ 496,000.00." Except for the fact that an Egyptian government official moved into one of the family's houses in 1967, all the evidence of record is consistent with a loss of either the business or the personal assets. Under the circumstances, see also note 6, supra, we need not accept Mr. Nadler's testimony as gospel. See Fleischer v. Commissioner,403 F.2d 403, 406 (2d Cir. 1968), affg. a Memorandum Opinion of this Court; Leong v. Commissioner,T. C. Memo. 1977-19, *272 affd. without published opinion 573 F.2d 1291 (2d Cir. 1977). We therefore hold that petitioners have failed to meet their burden of proving that the losses claimed related to the personal use assets. [8]
*273 Petitioners further contend that, in any event, the loss of Mr. Nadler's interest in Nadler Brothers was greater than the sum of the amount deducted in 1967 and the payment received in 1981 so that, even if the 1967 deduction related to Nadler Brothers, the 1981 payment was still a return of basis. In general, the basis of property is its cost. Section 1012. If property is acquired from a decedent, however, its basis is the fair market value at the time of the decedent's death. Section 1014(a). Fair market value is defined as the price at which property will change hands between a willing buyer and a willing seller, neither of whom is under a compulsion to buy or sell. Section 20.2031-1(b), Estate Tax Regs.; see also Estate of Andrews v. Commissioner,79 T.C. 938, 940 (1982). Fair market value is a question of fact. 79 T.C. at 940. Petitioners argue that Mr. Nadler's basis in the portion of Nadler Brothers he inherited from Maurice Nadler in 1941 is EL 100,000 or $ 403,000. This figure is based on the cost of Nadler Brothers' assets in 1941 as such *274 costs appeared in documents viewed by the Efraim Nadler, Mr. Nadler's brother, in 1951. Efraim Nadler did not testify as to whether the amounts were the costs of Nadler Brothers' total assets or net assets, and in either case such cost figures do not taken into account unrecorded liabilities. We have no other information concerning Nadler Brothers' assets in 1941, such as their age, condition or usefulness. Nor have petitioners introduced any other evidence as to the 1941 fair market value of Mr. Nadler's inherited interest in Nadler Brothers. [9] The scant evidence in the record is not sufficient to carry petitioners' burden of proving the fair market value of that interest at that time. Nor do we believe that we have any valid basis in the record before us upon which to base an estimate of such value. *275 Petitioners next argue that Mr. Nadler's cost basis in the interest he purchased in 1952 was EL 30,000, or $ 84,000. In the proposed findings of fact in his original brief, respondent in effect conceded that Mr. Nadler paid EL 20,900 or $ 58,520, for that interest. The witness on whom petitioners rely was uncertain as to the amount that was paid, estimating that it was EL 30,000. Because EL 20,900 is Mr. Nadler's pro rata share of the total purchase price of EL 230,000, we hold that Mr. Nadler paid EL 20,900, or $ 58,520, for the approximately 3 percent of Nadler Brothers purchased in 1952. Respondent, in his proposed findings of fact in his original brief, in effect conceded and we hold that Mr. Nadler paid EL 130,000 or $ 364,000 for the 13 percent interest in Nadler Brothers that he purchased in 1958 or 1959. [10]
*276 Thus, as far as this record reveals, Mr. Nadler's basis in his interest in Nadler Brothers in 1967 was the sum of the two purchase prices, or $ 422,520, plus the 1941 value of the 8 percent interest inherited from Maurice Nadler. Even if we were to ascribe value to that inherited interest, we would not find that it exceeded approximately $ 73,500. Thus, the maximum basis which we might ascribe to Mr. Nadler's interest in Nadler Brothers would be no more than the $ 496,000 which he deducted in 1967. Petitioners have failed to show that this amount was not the entire deduction to which he was entitled in 1967. In view of this result, we need not reach respondent's contention that petitioners would not be entitled to exclude the 1981 payment from gross income because of the 1967 deduction even if that deduction was less than the full amount of Mr. Nadler's basis of his interest in Nadler Brothers. Compare Boehm v. Commissioner,146 F.2d 553 (2d Cir. 1945), revg. and remanding a Memorandum Opinion of this Court; Commissioner v. Speyer,77 F.2d 824 (2d Cir. 1945), affg. 30 B.T.A. 517 (1934); Drier v. Helvering,72 F.2d 76 (D.C. Cir. 1934), *277 revg. a Memorandum Opinion of this Court; First National Bank v. Commissioner,22 T.C. 209 (1954), affd. per curiam 221 F.2d 959 (2d Cir. 1955); Birmingham Terminal Co. v. Commissioner,17 T.C. 1011 (1951); Birnbaum v. Commissioner,T. C. Memo. 1978-429; Chronister v. Commissioner,T. C. Memo. 1973-237. Given our holding as to petitioners' failure to carry their burden of proof, the 1981 payment falls squarely within the tax benefit rule as it applies to recoveries of losses. See page 6, supra. There was a deduction of the entire amount of the loss and a subsequent recovery. Petitioners have not claimed that they did not receive a tax benefit for the entire amount deducted. [11] Therefore, the amount recovered is includable in gross income. Decision will be entered for the respondent.
Footnotes
1. Before Maurice's death, the other owners of Nadler Brothers were Solomon Nadler and Marco Nadler. ↩
2. Egyptian Pound. ↩
3. The following parties have stipulated that an Egyptian Pound was worth the following amounts in United States dollars during the relevant years: Year
Value
1941
$ 4.03
1952
2.80
1958
2.80
1959
2.80
1961
2.87
1967
2.30
1981
1.45
Throughout the opinion, we will use these rates when it is necessary to convert amounts expressed in Egyptian currency to amounts in United States currency. ↩
4. By this time, Mr. Nadler also owned a 24-percent interest in the real estate, located in Egypt, that had been in Maurice Nadler's estate, as well as interests in various other items of personal property. ↩
5. All Rule references are to the Tax Court Rules of Practice and Procedure, and, unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect during the years in issue. ↩
6. The difficulties may not have been as great as petitioners would have us believe. We note that several stipulated exhibits representing correspondence by Mr. Nadler's attorneys with respect to his claims against the Egyptian government refer to enclosures which are not contained in the stipulation. No effort was made to produce those enclosures nor to explain why they could not have been obtained from the attorneys' files. Similarly, Mr. Nadler's Egyptian attorney, Mr. El Hadidi, who testified at the trial, did not produce, nor was he asked to produce, any documentary evidence from his files, although he had been representing Mr. Nadler in connection with his claims against the Egyptian government since 1961 and continuing to the time of trial. ↩
7. In the case of nonbusiness casualty losses, the deduction is limited to the lesser of the diminution in fair market value or adjusted basis. Helvering v. Owens,305 U.S. 468 (1939); Lamphere v. Commissioner,70 T.C. 391, 395↩ (1978). 8. We need not decide whether those assets were held by Mr. Nadler for investment or in a trade or business. We are reinforced, however, in our conclusion that the 1967 loss deduction did not relate to the personal use assets by section 165's limitation on expropriation loss deductions for individuals to those incurred with respect to assets held for investment or in a trade or business, because of the likelihood that the family home and personal assets were not such assets, even though Mr. Nadler did not use them himself on a regular basis. (Expropriation losses are not casualty or theft losses under section 165(c)(3). See Farcasanu v. Commissioner,50 T.C. 881 (1968), affd. 436 F.2d 146 (D.C. Cir. 1970); cf. Popa v. Commissioner,73 T.C. 130 (1979)). In addition, we note that, if in fact the losses deducted represented non-business assets, it could be argued that, on the basis of the record before us, petitioners would not have satisfied their burden of proof that the $ 170,510 recovery was not attributable to the claim against the Egyptian government in respect of the loss of personal use assets; the record contains no document revealing the terms of the award and the stipulation simply states that "In 1981, the Egyptian government paid Emanuel Nadler $ 170,510.00 on his claim." Nor would the fact that, under the foregoing circumstances, the 1967 deduction would appear to have been erroneous preclude taxability of the 1981 recovery under the tax benefit rule. Unvert v. Commissioner,72 T.C. 807 (1979), affd. 656 F.2d 483↩ (9th Cir. 1981). 9. The record contains a copy of a valuation report dated August 26, 1961 (some 20 years after Maurice Nadler's death), prepared by one P. L. Cappiello, which purports to value the building and equipment of Nadler Brothers. Not only does it relate to a time some 20 years later, but we also do not have any evidence of Mr. Cappiello's methodology, and there is no indication as to the value of other assets or the extent of the liabilities of Nadler Brothers. ↩
10. In his reply brief, respondent seeks to withdraw the proposed findings in his original brief. We are not inclined to permit such withdrawal because to do so would put petitioners at a disadvantage, their reply brief having been filed as a response to respondent's original brief. In any event, respondent's analysis in his reply brief is based on documents purporting to show the fair market value of Nadler Brothers after the critical acquisition dates, which obviously cannot be equated with cost. Moreover, even if we were to permit the withdrawal, we would not change our holdings as to the cost basis of the approximately 3 percent and the 13 percent interests in Nadler Brothers acquired by Mr. Nadler in 1952 and 1958 or 1959. ↩
11. The record shows that, as of the end of 1968, there was a substantial usused loss, but there is no indication that such loss was not utilized in subsequent years with a concomitant tax benefit, and petitioners have not claimed otherwise. ↩